IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Brief October 16, 2002 Session

## STATE OF TENNESSEE v. DENNIS R. GOLTZ

**Direct Appeal from the Circuit Court for Hickman County**
**No. 00-5092CR-II     Timothy L. Easter, Judge**

---

**No. M2001-02019-CCA-R3-CD - Filed January 15, 2003**

---

The Appellant, Dennis R. Goltz, was convicted by a Hickman County jury of class E felony theft and sentenced to a term of two years, with sixty days to be served in confinement. On appeal, Goltz raises the following issues: (1) whether the trial court erred by removing a juror during the trial after that juror expressed concern about his ability to be fair and impartial; (2) whether he was denied a fair trial due to prosecutorial misconduct during the State's closing argument; and (3) whether his sentence was excessive based upon the trial court's failure to apply a mitigating factor. After review, we find no error with respect to issues (1) and (3). With regard to issue (2), we find that the prosecutor's closing argument affected the verdict to the prejudice of Goltz. Accordingly, the judgment of the trial court is reversed, and this case is remanded for a new trial.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Reversed and Remanded.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ. joined.

Timothy V. Potter, Dickson, Tennessee, for the Appellant, Dennis R. Goltz.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Thomas E. Williams, III, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Kenneth Crites, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On June 8, 2000, the Appellant, in the course of his duties as a deputy with the Hickman County Sheriff's Office, was dispatched to Highway 100 where a Centerville police officer had detained two female suspects for burglarizing vending machines. A search of the suspects' car

yielded various burglarious instruments and a bag of coins. The Appellant and his partner, Deputy Carl Hutchinson, arrested both the driver of the vehicle, Jamie Freels, and her passenger, Sharon Duncan. The two suspects were then transported to the Hickman County Sheriff's Office.

Duncan, who was released first, retrieved the car from the impound lot and picked up Freels after she was released on bail. The next morning Freels discovered that three rings were missing from her car and contacted several law enforcement personnel, including Detective Terry Chandler at the Hickman County Sheriff's Department. Freels explained that she had removed the rings prior to burglarizing the machines and placed them in the console because she did not want the rings damaged. Detective Chandler asked the Appellant if he had seen the rings during his search of the suspects' car. The Appellant denied any knowledge of the rings. Additionally, Deputy Hutchinson was questioned about the rings, and he also advised that he had no knowledge as to their disappearance.

On June 23, 2000, an envelope addressed to Freels was delivered to the sheriff's department marked by the post office "return to sender." On the envelope, "Terry Chandler" was shown as the sender. Inside the envelope were the three missing rings. A TBI investigation followed, during which a forensic document examiner determined that the handwriting on the address portion of the envelope was that of the Appellant. The document examiner was unable to conclude, however, that the return address on the envelope was written by the Appellant. In addition, Deputy Hutchinson recanted his prior statement and admitted he had observed the rings in the Appellant's possession during the search of the vehicle.

On November 6, 2000, the Appellant was indicted by the Hickman County grand jury for theft of property over $500 but less than $1000. At the conclusion of the trial on May 17, 2001, a jury found the Appellant guilty of theft as charged. The Appellant was subsequently sentenced to two years in the Tennessee Department of Correction, with all but sixty days of the sentence suspended. The Appellant was also barred from serving as a law enforcement officer in Tennessee.

**Analysis**

**I. Removal of Juror**

The Appellant asserts that he should have been granted a new trial because he was prejudiced by the trial court's removal of Juror #50, when the juror informed the court that he had observed conduct in the courtroom which he felt was favorable to the Appellant. The juror, while seated in the jury box, overheard Sharon Duncan, a prosecution witness, who at the time was seated in the courtroom, tell Jamie Freels "I got his ass." The following colloquy occurred between the trial judge and the juror at a hearing of the issue:

Q. [Trial Judge]:     Does that incident cause you any concern that's going to affect your ability to be fair and impartial if you stay on this jury?

A. [Juror]:     Yes, because I think, in my opinion, [Duncan] set him up. That's what she was saying. And the fact that she was accused of forgery, really emphasizes that.[1]

Over the objection of the defense, the juror was removed and replaced by an alternate. The Appellant contends that this removal, occurring after the State's close of proof, was highly prejudicial to his case. Furthermore, he argues that, because the conduct was observed by the juror in the courtroom from the jury box, it was evidence which the juror was entitled to consider. This appears to be a question of first impression before the courts of this state.

Consistent with constitutional guarantees, this court has previously observed that "[b]oth the defendant and the State are entitled to a fair trial by unbiased jurors and it is the duty of the trial judge to discharge any juror who for any reason cannot or will not do his duty in this regard." *Walden v. State*, 542 S.W.2d 635, 637 (Tenn. Crim. App. 1976). Tennessee Rule of Criminal Procedure 24(e)(1) clearly contemplates the replacement of a juror with an alternate if, at any time prior to the jury's withdrawal to consider its verdict, the trial court finds the juror "to be unable or disqualified to perform [his] duties." *State v. Max*, 714 S.W.2d 289, 293 (Tenn. Crim. App. 1986) (citing Tenn. R. Crim. P. 24(e)(1)). The determination of whether a juror is unable or disqualified to perform his duties lies within the sound discretion of the trial court. *State v. Forbes*, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995). The defendant bears the burden of demonstrating that the trial court abused its discretion and that he was prejudiced by the substitution. *Max*, 714 S.W.2d at 294.

If the statement was not evidence, clearly the trial judge was acting within its discretion to remove the juror because of the juror's strong belief that the Appellant was "set up." Evidence is defined as " any species of proof legally presented at trial through the medium of witnesses, records, documents, exhibits, and concrete objects for the purpose of inducing belief in the minds of the court or jury." 29 AM. JUR. 2d *Evidence* § 1 (1994). Matter which was not introduced or presented as evidence at trial does not come within the commonly accepted definition of evidence. *Id.* at § 3. At the conclusion of a trial in this state, the trial court instructs the jury that "[e]vidence is whatever has been *admitted by the court* during the course of the trial for you the jury to see, hear, or examine." T.P.I.–CRIM. 42.01 (emphasis added). We conclude that the statement heard by the juror was not evidence, as it was not legally presented by an act of the parties or admitted by the court. The admission of evidence is determined by rules of law, *i.e.*, Tennessee Rules of Evidence. To permit a single juror's observation of a statement not made under oath or subject to cross-examination would obviate the rule. Because the juror admitted bias, the trial court was within its discretion in removing the juror. Accordingly, we find no error.

---

[1] The proof established that the witness Duncan had been previously convicted of forgery.

## II. Prosecutorial Misconduct

The Appellant argues that he was denied a fair trial because of prosecutorial misconduct during the State's closing argument. Citing to specific instances of improper comments by the prosecutor, the Appellant now contends that these comments were so prejudicial as to warrant a new trial.

Our supreme court has long recognized that closing argument is a valuable privilege for both the State and the defense and have allowed wide latitude to counsel in arguing their cases to the jury. *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1994). Trial judges in turn are accorded wide discretion in their control of those arguments, *State v. Zirkle*, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995), and this discretion will not be interfered with on appeal in the absence of abuse thereof. *Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975). Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law. *Coker v. State*, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995). We are mindful of the oft quoted principle that a prosecutor must be free to present his arguments with logical force and vigor, "[b]ut, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935).

When argument is found to be improper, the established test for determining whether there is reversible error is whether the conduct was so improper or the argument so inflammatory that it affected the verdict to the Appellant's detriment. *Harrington v. State*, 385 S.W.2d 758, 759 (Tenn. 1965). In measuring the prejudicial impact of any misconduct, this court should consider: (1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case. *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); *see also State v. Buck*, 670 S.W.2d 600, 609 (Tenn. 1984).

It is impossible to set out in detail what can and cannot be said in closing argument. Various factors are involved in this determination including the facts of the particular case and oftentimes responses to argument of opposing counsel. In this regard, we find the AMERICAN BAR ASSOCIATION STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION helpful. Although these standards set forth objectives for professional conduct, they have, to a large degree, been adopted by our supreme court in case decisions and, to that extent, are directory.

Within the closing argument, five general areas of prosecutorial misconduct are recognized:

1.     It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

2. It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. *See State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); *Lackey v. State*, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978); TENN. CODE OF PROF'L RESPONSIBILITY DR 7-106 (c)(4).

3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. *See Cauthern*, 967 S.W.2d at 737; *State v. Stephenson*, 878 S.W.2d 530, 541 (Tenn. 1994).

4. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. *See Cauthern*, 967 S.W.2d at 737; *State v. Keen*, 926 S.W.2d 727, 736 (Tenn. 1994).

5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION §§5.8-5.9 Commentary (ABA Project on Standards for Criminal Justice, Approved Draft 1971).

After review of the State's closing argument, we find violations occurring within four of the above defined areas and repeated and ongoing violations throughout the entire closing argument within two of these areas.[2]

## A. Vouching for the credibility of witnesses and expression of personal belief.

Expressions by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment which should separate a lawyer from the cause for which he argues. *Id.* at § 5.8 (b) Commentary b. The prohibition prevents the advocate from personally endorsing or vouching for or giving his or her opinion; the cause should turn on the evidence, not on the standing of the advocate, and the witnesses must stand on their own. *Id.*

---

[2] We would acknowledge that the instances of misconduct which we reference are more encompassing than those specifically challenged as improper by the Appellant. Nonetheless, because the misconduct is of the same character, to do substantial justice, our review is extended to the entirety of the prosecutor's closing argument. Tenn. R. Crim. P. 52(b).

The following comments during closing argument illustrate the prosecutor's violations of vouching for the credibility of witnesses and his expression of personal belief as to the guilt of the Appellant and the evidence.

And I promise you for Assistant Chief Overbey . . .

. . . if it weren't anything but the truth beyond all doubt in these officers mind, we wouldn't be here. . . .

. . . Robert Muehlberger, probably one of the finest handwriting analysis in the country, . . .

. . . I find it terribly intensive (sic) not only do this man take a badge and steal from people out here on the road, . . .

. . . I'm going to tell you, I know for a fact that Carl Hutchinson is honest, and I know Robert Muehlberger

Mr. Potter: Objection to the testimony

The Court: Sustain the objection. General you know that's improper. Whether these attorneys believe the credibility of their witnesses, should be disregarded by you. You are to determine the credibility of these witnesses, not these attorneys. General, you know that's improper. Sustain the objection. . . .

. . . I don't see any credible evidence on the side of the defendant, . . .

And I promise you, these officers that got up here and testified, they don't like to do it. It's painful, because even though it doesn't rationally or shouldn't affect their own personal integrity and credibility, they feel like it does. . . . Let me tell you something. I defend people for a lot of years, and I have never ever been real excited about government corruption, and this case has been called that. . . .

So I'm a hundred percent competent that Dennis Goltz mailed this envelope. I bet my life on it. That's how convincing this is. . . .

He's guilty. He is guilty as sin, and I'm going to tell you, I, from time to time try to control my anger, but I'm angry that he would come in here and lie to you. I'm angry that a police officer would steal from a citizen. I'm angry that he lied to you, and tried to ruin Carl Hutchinson's reputation, with a bunch of bogus lies and allegations trying to say that Carl's testimony is not credible. So he can escape this and go back to work. . . .

-6-

I hate it, because I have to stand here, you know, case after case, I have to ask you to believe these police officers. How am I going to do that with Dennis Goltz? . . .

I'm here to judge his acts on that particular day, and he's guilty. . . .

And I'm telling you, he's telling you the truth. That's all it is. It's just that simple. It's the truth. . . .

## B. Prosecutorial argument offered to intentionally inflame or prejudice the jury.

Arguments which rely upon racial, religious, ethnic, political, economic or other prejudices of the jurors introduce elements of irrelevance and irrationality into the trial which cannot be tolerated in a society based upon the equality of all citizens before the law. *Id.* at § 5.8 Commentary c. If the jury's pre-disposition against some particular segment of society is exploited to stigmatize the accused or his witnesses, such argument has clearly trespassed the bounds of reasonable inference or fair comment on the evidence. *Id.*

The following are illustrations of the prosecutor's closing argument which we find violate this standard.

You can't have a criminal like Dennis Goltz behind a badge and a gun . . .
. . . just an unhanded thief. . . .

## C. Message to the community.

The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. *Id.* at § 5.8 (d). Predictions as to the consequences of an acquittal on lawlessness in the community also go beyond the scope of the issues in the trial and are to be avoided. *Id.*

The following are illustrations of the prosecutor's closing argument which we find violate this standard:

And as a result of when one bad apple does something wrong, it affects the community and their view of law enforcement, and the respect for it. And it affects each officer individually. . . .

And two, it ain't just a theft case, okay. It's a case about safety and security of this community. . . .

I want you to think about whether we want Dennis Goltz inside of residences in this community investigating burglaries, whether we want Dennis Goltz stopping our wives, daughters, sons, and husbands out on some dark road at night, because each of us put our trust in these law enforcement. . . .

. . . if Dennis Goltz walks out of here, he'll back on the police force again. . . .

And if you cut him loose, he's going to be right back out there again, according to him, tomorrow night with a gun and a badge, and that is wrong. . . .

. . . but he will come in here and lie to you and never blink about it. And why can he do that, because he's done it for a long time. A long time, and he's used to doing it. He's used to having the power to get away with it, and I ain't going to let him get away with it on my watch. It's not right. And I want to believe, that when my family gets on the road late at night, their not going to encounter Dennis Goltz. . . .

In this case here, it's brings me back to some old feelings about why it's so important to have these constitutional protection in place and people in places like law enforcement that you can trust, because they got a lot of power. They're going to be in your house on certain things on warrants, pulling somebody over or stopping people on the side of the roads, and you know, this is a time where you can say, you're guilty of this crime and we're not going to have it, you know. . . .

. . . because he wants to go back to being a police officer where he can corruptly make money by stealing. That's why it's important for him to come here and lie to you. . . .

Officers take the stand and they don't make incriminating statements and they leave very little tracks, and if it wasn't for this right here, we might not ever have got him. . . .

So he can escape this and go back to work. I'm going to tell you if you cut him loose, and you go home and he's out there and the next time he commits a crime or get somebody, who are you going to call? Is this who we [w]ant in our house investigating theft, or riding on the roads, pulling people over at night when there's nobody there but him and them? Is this kind of person you want handling people's evidence and money, jewelry as in this case? Guns? Is that what we want? And the reason they tell you that is don't cut him loose for sympathy, or just because you're not comfortable rendering a guilty verdict. Don't do it. Don't do it to yourselves? Don't do it to this community? . . .

And what about the guys that have to ride out there at night with him and investigate things and deal with dangerous felons, and they have to depend on them. What about them? They deserve the right thing to be done. . . .

If we cut him loose, he'll go right back. He is the worst kind to put in that position. He steals. He will lie without blinking at you, and folks, that's just a step away from horrible acts. This is somebody you got to trust and use discretion about legal force, and when you view all those things, those are thing you need to think about. . .

So when you go back there, you've got to do the right thing, and follow the law and you got to vote guilty. . . .

Do you want to rely on your safety when you get pulled over by him? I don't think so. I'm going to ask you to go back there and come back with a guilty verdict and do it, you know, for this community and family. . .

## D. Arguing facts outside the record.

It is unprofessional for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge. *Id.* at § 5.9. Arguing facts outside the record could involve a risk of serious prejudice. *Id.*

The following are illustrations of the prosecutor's closing argument which we find violate this standard:

They testify everyday, and they basically, to a degree, are professional witnesses. They're not easy to catch. . . .

I have several items that my mom left me, and I'd like to think their worth a whole lot of money and a lot of them I've never had an appraisal done, but they're worth a lot to me; a whole lot. . . .

Now, I want to make some to do about DNA; why we didn't do a DNA, fingerprint analysis. Let me tell you, if you do a DNA test, you destroy it for. . .

Mr. Potter: Objection

The Court: Sustained. General, evidence has been concluded. You argue what's in evidence.

It is obvious from a review of the record of the closing argument that the improper comments were not isolated utterances by the prosecutor. Although the trial court sustained two objections to the argument, the improper comments continued unabated. The prosecutor's reoccurring theme throughout his entire argument focused not upon the evidence, but rather, upon the need for the jury to "save the community" and, thus, send a message through its verdict. The prosecutor repeatedly characterized the Appellant as a thief and a liar and commented that ". . . he's done it for a long time." Finally, we are unable to ignore the prosecutor's injection of his personal beliefs within his argument and his vouching for the credibility of state witnesses. Indeed, because the proof in the case was not overwhelming, the issue of witness credibility was critical. In sum, we conclude that the prosecutor's improper comments were so egregious as to permeate the jury's verdict to the Appellant's detriment. Accordingly, we find the error reversible.

## III. Application of Mitigating Factor at Sentencing

The Appellant contends that the trial court erred by failing to apply mitigating factor (5), that "[b]efore detection, the defendant compensated or made a good faith attempt to compensate the victim of criminal conduct for the damage or injury the victim sustained." Tenn. Code Ann. § 40-35-113(5). The trial court denied application of this mitigator based upon the Appellant's contention at trial that he was not the person who returned the rings.

We agree with the Appellant that a mitigating factor may be applicable despite pleading not guilty to a crime and protesting one's innocence. Nonetheless, in the case before us, we find that the trial judge correctly refused to apply mitigating factor (5). The Appellant's act of mailing the rings was motivated, not by a good faith attempt to compensate the victim, but rather, in an attempt to avoid detection of his crime. This issue is without merit.

### CONCLUSION

While we find no error in the trial court's removal of the juror or refusal to apply mitigating factor (5), we do find reversible error based on the prosecutor's repeated improper and inflammatory comments during closing argument, which we conclude affected the verdict to the prejudice of the Appellant. Accordingly, the judgment of conviction is reversed, and the case is remanded for a new trial.

_____
DAVID G. HAYES, JUDGE