IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 16, 2005

**STATE OF TENNESSEE v. HALBERT VARNELL**

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 239911   Rebecca J. Stern, Judge**

**No. E2004-02918-CCA-R3-CD - Filed October 6, 2005**

A Hamilton County jury convicted the Defendant, Halbert Varnell, of driving under the influence ("DUI").  The Defendant admitted that he had three previous DUI convictions, and the trial court sentenced him for DUI, fourth offense, a Class E felony.  The Defendant now appeals, contending that: (1) insufficient evidence was presented at trial to support his DUI conviction; and (2) the trial court erred by permitting improper closing argument by the State.  Finding no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Ardena J. Garth and Donna Robinson Miller, Chattanooga, Tennessee (on appeal) and Philip L. Duval, Chattanooga, Tennessee (at trial) for the Appellant, Halbert Varnell.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William H. Cox III., District Attorney General; and Jay Woods, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I.  Facts**

This case arises from the Defendant's conviction for DUI, fourth offense.  At the Defendant's trial, the following evidence was presented: Nicholas Allen, an officer with the Chattanooga Police Department, testified that, on the morning of July 30, 2001, at approximately 3:20 a.m., he saw the Defendant driving his car with the headlights off.  The officer said that he activated his emergency lights, and he began to follow the Defendant.  He recalled that the Defendant continued to drive for one-half block, made a right turn, and continued for another half block, before he pulled his vehicle

over. Officer Allen testified that, when he approached the vehicle, the Defendant became agitated and belligerent, and, because the Defendant was so agitated, he asked the Defendant if the Defendant had been drinking. The Officer said that the Defendant acknowledged that he had been drinking, but he refused to tell the officer what he had been drinking, or how much alcohol he had consumed. Officer Allen testified that he asked the Defendant to step out of the Defendant's vehicle so that the Defendant could perform the field sobriety tests. He stated that the Defendant initially refused, but the Defendant eventually, voluntarily, came out of his vehicle. Officer Allen testified that, after the Defendant had exited his vehicle, he refused to take any of the field sobriety tests, and Officer Allen noticed that the Defendant was unsteady as he walked, had slurred speech, and smelled strongly of alcohol. Based on the Officer's experience and training, the officer did not believe that the Defendant could safely operate a motor vehicle, and he, therefore, placed the Defendant under arrest for DUI.

Officer Allen testified that, pursuant to this arrest, the officer brought the Defendant to jail. He then stated that upon arrival at the jail, he read to the Defendant the implied consent form and offered him a breathalyzer test, however, the Defendant refused to sign the implied consent form and refused to take the breathalyzer test.

On cross-examination, Officer Allen agreed that the Defendant was observing the speed limit, was not swerving, and came to a complete stop at the intersection. He further conceded that, although he testified that he detected a "strong odor of alcohol" when the Defendant exited his vehicle, the affidavit of complaint that he filed after the Defendant's arrest did not use the word "strong" to describe the odor of alcohol, it simply stated that the "[p]olice could smell alcohol on [D]efendant's breath." He explained that, the affidavit makes no mention of slurred speech, but he might not include a person's speech in an affidavit. The Officer had no independent recollection of exactly where he observed the Defendant walking unsteadily. Officer Allen testified that, if the Defendant were so unsteady that he could not possibly complete the field sobriety tests, the Officer would not have asked him to attempt such tests.

On redirect Officer Allen testified that he had worked as a patrol officer for nearly three years since arresting the Defendant, he had received additional training, and he had made over two hundred DUI arrests by the time the Defendant's case came to trial. His opinion, that the Defendant was unable to safely operate his motor vehicle, remained unchanged. However, Officer Allen conceded that it would have been helpful if he had been more thorough in his completion of the affidavit.

Following this evidence, the jury found the Defendant guilty of DUI. The Defendant admitted that he had three prior DUI convictions, and the trial court entered judgment against the Defendant for DUI, fourth offense.

## II. Analysis

On appeal, the Defendant asserts that: (1) insufficient evidence was presented to support his DUI conviction; and (2) the trial court permitted improper closing argument by the State.

## A. Sufficiency of Evidence

The Defendant alleges that there is insufficient evidence in the record to support his DUI conviction. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775. Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. See State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Under Tennessee law, to support a conviction for DUI, the State is required to prove, beyond a reasonable doubt, that the Defendant was driving or "in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys . . . while . . . [u]nder the influence of any intoxicant . . . ." Tenn. Code Ann. §55-10-401(a)(1) (2004). A criminal offense may be established exclusively by circumstantial evidence. State v. Raines, 882 S.W.2d 376, 380 (Tenn. Crim. App. 1994) (citing State v. Hailey, 658 S.W.2d 547, 552 (Tenn. Crim. App. 1983)). However, before an accused can be convicted of a criminal offense based on circumstantial evidence alone, the facts and circumstances "'must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant . . . .'" Id. (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)). "In other words, a web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt.'" Id. (quoting Crawford, 470 S.W.2d at 613). We note that this Court has often found that an arresting officer's testimony alone is sufficient to support a defendant's conviction for DUI. See, e.g. State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993).

In the case under submission, elements one and two, that the Defendant was driving a motor vehicle and on a public road, are uncontroverted. The Defendant contends in his brief that there was insufficient evidence presented to prove element three, that he was under the influence of an

intoxicant. We disagree. Viewing the evidence in the light most favorable to the State, it proves that Officer Allen stopped the Defendant after he observed him driving at night without his headlights on, and the Defendant was agitated and demanded to know why he had been stopped. The Defendant admitted that he had been drinking alcohol, and the officer noted that the Defendant was unsteady on his feet, had slurred speech, and smelled strongly of alcohol. The Defendant refused to attempt to perform field sobriety tests, and the Defendant refused to submit to a breathalyzer test. We conclude that this evidence is sufficient for a rational trier of fact to find the essential elements of driving under the influence beyond a reasonable doubt.

## B. Improper Closing Argument

The Defendant's second assertion is that part of the State's closing argument was improper. Specifically, the Defendant objects to the following comments by the State, which were made during its rebuttal closing argument:

> One piece of evidence you can take back in the jury room with you that hadn't been testimonial in nature, you can look at it and feel that this is the form that was used with this [D]efendant on the night he was arrested for DUI. Given the opportunity to take the test he said no. Given the opportunity to take the standard field sobriety tests on the side of the road, he said no. Given the chance to sign his name to a form, he said no. He was hiding then and he's hiding now, he is hiding behind three years and he wants you to believe that because the officer can't remember every minute detail, the switch, was it a full switch or was it a turn switch. Because he can't remember that detail, he wants you to believe that this [D]efendant [sic] is not truthful.
>
> He didn't take the standard filed sobriety tests. He didn't take the chemical tests. He didn't sign the form. He was hiding then and he is hiding now. Why?

On appeal, as in his motion for a new trial, the Defendant asserts the State's claim that the Defendant is "hiding," was an impermissible comment on the Defendant's decision not to testify on his own behalf. The State contends that the Defendant waived this issue when he failed to contemporaneously object to the statement, and, even if the issue has not been waived, the comment was simply a response to the Defendant's closing arguments, not a comment on the Defendant's failure to testify.

The State initially contends that the Defendant has waived this issue by failing to object contemporaneously to the closing argument. At the close of trial, after the trial court had instructed the jury, the Defendant's attorney made a motion for judgment of acquittal, which the trial court denied. The following then occurred:

> [Defendant's Counsel]: Judge, I want to make a comment. I don't know if it's the right time to do it. I may have misinterpreted remarks of [the Prosecutor] in closing

-4-

argument and I may not be recalling them correctly, I don't know whether to bring them up now or later and I may be wrong in remembering what he said. But just thinking about while you were instructing the jury and I thought I heard him say that [the Defendant] was hiding then and he is hiding now. To me was an inference to his not testifying. I don't have any other way to take it. He may not have intended it but I don't even know I told you the words that he used.

The Court: He didn't comment on his testimony.

[Prosecutor]: I said he was hiding then and he is hiding now behind three years that he blames the officer - -

The Court: He didn't comment on that, that's all right.

Both parties agree that the Defendant raised this issue in his motion for new trial, and the State responded then, as it does on appeal, that its comments were not addressing the Defendant's failure to testify, but were given in response to the Defendant's closing argument. The Defendant's attorney, in closing argument, stated "the only written record of this case is three years ago" and Officer Allen "acknowledged that he didn't state it was a strong odor three years ago. He just said in his report that police could smell alcohol" and "Officer Allen . . . doesn't have any real independent recollection of how unsteady [the Defendant] was" and "Officer Allen's testimony is faded." The trial court did not treat this issue as waived, and it addressed the issue on its merits, finding:

> I think in context, the overall context of everything, it was not a comment on his failure to testify in court. In addition, of course, I gave instructions to the jury that comments by attorneys weren't evidence and also I gave an instruction about the [D]efendant's right not to testify.

> I think in all of the context, it could be taken another way, the way [the Assistant District Attorney General] apparently meant it. You were right on that borderline, it was a risky comment. I don't think it was in fact a comment on his right not to testify.

Although the better course for defense counsel may have been to immediately object, during the State's closing argument, to the allegedly prejudicial statements made during that argument, we are not inclined to conclude that the Defendant has waived this issue. The issue was brought to the attention of the trial judge, and ruled upon, prior to the jury deliberations. Under the circumstances of this case, we choose to address this issue on the merits. See generally Goins v. State, 572 S.W.2d 644 (Tenn. 1978).

The Tennessee Supreme Court "has long recognized that closing arguments are a valuable privilege that should not be unduly restricted." Terry v. State, 46 S.W.3d 147, 156 (Tenn. 2001) (citing State v. Sutton, 562 S.W.2d 820, 823 (Tenn. 1978)); State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). "Consequently, attorneys are given greater leeway in arguing their positions before the jury, and the trial court has significant discretion in controlling these arguments, to be

reversed only upon a showing of an abuse of that discretion." Terry, 46 S.W.3d at 156 (citing Sutton, 562 S.W.2d at 823); see Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975); Goltz, 111 S.W.3d at 5. This Court has explained that "[closing] arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." Goltz, 111 S.W.3d at 5 (citing Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995)).

When an appellate court finds an argument to be improper, "the established test for determining whether there is reversible error is whether the conduct was so improper or the argument so inflammatory that it affected the verdict to the Appellant's detriment." Goltz, 111 S.W.3d at 5 (citing Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, 759 (1965)). In measuring the prejudicial impact of an improper argument, this Court should consider the following factors: "(1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case." Goltz, 111 S.W.3d at 5-6 (citing Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)); see State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984).

In Goltz, this Court found that within the closing argument, five general areas of prosecutorial misconduct are recognized:

1. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
2. It is unprofessional conduct for the prosecutor to express his [or her] personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. See State v. Thornton, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); Lackey v. State, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978); TENN. CODE OF PROF'L RESPONSIBILITY DR 7-106(c)(4).
3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. See [State v.]Cauthern, 967 S.W.2d [726,] 737 (1998); State v. Stephenson, 878 S.W.2d 530, 541 (Tenn. 1994).
4. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. See Cauthern, 967 S.W.2d at 737; State v. Keen, 926 S.W.2d 727, 736 (Tenn. 1994).
5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

Goltz, 111 S.W.3d at 6 (quoting STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION §§ 5.8-5.9 Commentary (ABA Project on Standards for Criminal Justice, Approved Draft 1971)).

When a defendant elects not to testify at trial, a prosecutor may not comment upon the defendant's failure to make a statement to the police because this would punish the defendant for exercising his or her constitutional right to remain silent. Braden v. State, 534 S.W.2d 657, 659-60 (Tenn. 1976). The United States Supreme Court has held that it is "impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that [a defendant] stood mute or claimed his privilege in the face of accusation." Miranda v. Arizona, 384 U.S. 436, 468 (1966). A prosecutor may comment upon the defendant's veracity when the comment is supported by evidence in the record. State v. West, 767 S.W.2d 387, 394 (Tenn. 1989); State v. Beasley, 536 S.W.2d 328, 330 (Tenn. 1976).

However, this Court has held that comments indicating that the State's proof remains uncontradicted do not implicate the defendant's choice not to testify. Thompson v. State, 958 S.W.2d 156, 168 (Tenn. Crim. App. 1997) (reviewing the failure to object to the State's argument that the defendant had offered no defense to the crime); State v. Thomas, 818 S.W.2d 350, 364 (Tenn. Crim. App. 1991) (analyzing the State's comment that "there's no other reasonable explanation, none given"); State v. Blackmon, 701 S.W.2d 228, 233 (Tenn. Crim. App. 1985) (analyzing the State's argument that the defendant had offered no "excuse or justification" for his escape); State v. Coury, 697 S.W.2d 373, 378 (Tenn. Crim. App. 1985).

After careful review of the record, we conclude that, the reference to the Defendant "hiding" was not improper. It was a proper response to the Defendant's closing argument, which attacked the Officer's memory of events that occurred three years prior to the Defendant's trial. Therefore, it was proper argument.

Even were we to conclude otherwise, and determine that these arguments were improper, we would still be called to determine whether the Defendant has proved prejudice. As part of this inquiry, we must look at any curative measures undertaken by the trial court, and this includes curative instructions. As the trial court noted, it instructed the jury:

> Any defendant in a criminal case has a right, as a matter of law, to refrain from testifying, and you are not to indulge any adverse inference against him by reason of the fact that he did not testify, but you will decide the case solely from the evidence which was introduced, and not from any motive of why he did not testify.

Although not given as curative instructions, these instructions were thorough and clear, alleviating any possible confusion regarding the effect of the Defendant's failure to testify. Given these circumstances, we conclude that any allegedly improper arguments by the State would not have prejudiced the Defendant. We conclude, therefore, that this issue is without merit.

### III. Conclusion

In accordance with the foregoing, we conclude that the trial court committed no reversible

error.  Therefore, the judgment of the trial court is affirmed.

                           _____

                           ROBERT W. WEDEMEYER, JUDGE