IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 15, 2025

**STATE OF TENNESSEE v. JEREMIAH NANCE**

**Appeal from the Circuit Court for Dyer County**
**No. 23-CR-163      Mark L. Hayes, Judge**

_____

**No. W2024-01473-CCA-R3-CD**

_____

The defendant, Jeremiah Nance, was convicted by a Dyer County Circuit Court jury of evading arrest in a motor vehicle with risk of death or injury for which he was sentenced to three years' incarceration. On appeal, the defendant argues that: (1) the trial court erred in allowing testimony that the police were responding to a domestic call; (2) the trial court erred in not allowing the victim to assert her Fifth Amendment right not to testify; and (3) the trial court committed plain error in allowing the prosecutor to misstate the evidence during closing argument. After review, we affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., and CAMILLE R. MCMULLEN, P.J., joined.

Cory Shaun Hancock, Jackson, Tennessee, for the appellant, Jeremiah Nance.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Timothy Boxx, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

The defendant was indicted for one count of evading arrest in a motor vehicle with risk of death or injury and two counts of reckless endangerment[1] as a result of his fleeing the scene of a domestic disturbance when officers arrived to investigate and leading the officers on a high-speed vehicle chase across the county.

---

[1] The two counts of reckless endangerment were dismissed prior to trial.

Natalie Turner Johnson and the defendant were previously in a romantic relationship, but on February 28, 2023, Ms. Johnson was in a relationship with someone else. Around 9:00 a.m. on the 28th, the defendant showed up at Ms. Johnson's home driving his metallic silver truck with a personalized license plate that read, "Nance." The defendant pulled his truck into the garage, "forced entry into [Ms. Johnson's] vehicle[,]" and forcibly took her inside the home. At some point, Ms. Johnson's mother learned of the situation from Ms. Johnson's then-boyfriend and proceeded to Ms. Johnson's home. Ms. Johnson's mother evidently also contacted law enforcement because sheriff's deputies were dispatched to investigate the "domestic situation."

Deputy Charlie Clark with the Dyer County Sheriff's Office was the first to arrive on the scene. When he approached the house, Deputy Clark noticed the garage door opening and a Ford F-250 backing out "kind of fast." Deputy Clark activated his blue lights signaling the truck to stop. Deputy Clark explained that when responding to a domestic disturbance call, it was protocol to "contain the area [and] try to keep everybody around" until they could assess the situation and "figure out what was going on." However, the truck continued to back out, almost hitting the front of Deputy Clark's cruiser, and then "turned left into the yard and sped out into the road." Deputy Renaldo Maiden arrived right after Deputy Clark and was almost hit when the defendant's truck maneuvered into the roadway. The truck accelerated and drove away, and both deputies began their pursuit.

During the early stages of the pursuit, Corporal Chris Cole, who had also been dispatched to the scene, rounded a curve towards Ms. Johnson's address when the truck approached him at a high rate of speed. Deputy Cole swerved off the road to avoid a collision and then fell in line behind Deputies Clark and Maiden in the pursuit.

Despite the officers using their sirens and blue lights, the truck continued speeding away, blowing black smoke out of the exhaust pipe when it accelerated and driving on the center line of the road. The pursuit continued through "the intersection of Mesa [Lane] and Sedona [Drive] in the Viar community, and then went from Sedona to Anderson Road. Then Anderson Road to Viar [Road]. Then Viar to [Highway] 104." The truck ran a stop sign and turned onto the highway, at which point Investigator Matt Carson took over lead in the pursuit as he was already traveling on the highway.

The four police cars continued pursuing the truck along Highway 104, a busy two-lane highway with several hills. While traveling at speeds in excess of 100 miles per hour, the truck came upon an AT&T work crew that had the highway partially blocked as they were installing a phone line across the road. One AT&T worker was lifted in a "bucket" in the air when he received warning about an approaching high-speed chase. The worker quickly came down and took cover behind his work vehicle. The truck passed the crew

"very aggressively" and continued along. Investigator Carson slowed down and was able to get by, but the other officers got caught in traffic and could never fully catch up.

The officers decided to terminate the pursuit at the county line because the road was busy and the risk to human life was high. All the officers acknowledged that they were unable to see inside the defendant's truck due to the window tint and were, therefore, unable to state with certainty that the defendant was the driver.

Following the conclusion of the proof, the jury convicted the defendant as charged of evading arrest in a motor vehicle with risk of death or injury and, after a sentencing hearing, was sentenced to three years' incarceration. The defendant appealed.

*Analysis*

On appeal, the defendant argues that the trial court erred in allowing testimony that the police were responding to a domestic call; the trial court erred in not allowing the victim to assert her Fifth Amendment right not to testify; and the trial court committed plain error in allowing the prosecutor to misstate the evidence during closing argument.

## I. Testimony Concerning Nature of the Call

The defendant argues that the trial court erred in allowing the State "to ask [Deputy] Maiden the nature of what officers were responding to because the prejudicial value substantially outweighed the probative value." The defendant asserts that the jury's very "hearing the words domestic disturbance was enough to create a prejudicial effect[.]" The defendant also claims that the State's questioning was contrary to the trial court's ruling at the motion in limine. The State responds that the trial court properly exercised its discretion in admitting the testimony. We agree with the State.

Prior to trial, the trial court held a hearing on a motion in limine filed by the State seeking permission to elicit testimony that law enforcement officers were responding to a domestic disturbance call just before the defendant engaged in the charged conduct. The court found that testimony concerning the officers' arrival would be useful to provide background and context but that the State should not "get too deep . . . into the details as to why [the officers] were there." The court ruled that "maybe the farthest you go is disturbance."

Thereafter, at trial, when questioned about the nature of the dispatch call to Ms. Johnson's residence, Deputy Clark responded, "It was a domestic situation[,]" and Deputy Maiden responded, "It came out as a domestic disturbance call." No contemporaneous objections were made by defense counsel, but later, during the motion for judgment of

- 3 -

acquittal, defense counsel asserted that the State's questioning was contrary to the court's ruling on the motion in limine. The State responded that it understood the court's ruling to be not to use the terms "domestic assault or domestic violence," but that the term "domestic complaint" could be used and that such testimony was necessary to explain why the officers sought to stop the defendant. The court ruled that the elicited "testimony was no more than was necessary to provide both the background and context information for the jury to be able to understand the circumstances as they existed at the time of the call and the reason for the stop. Whether or not there was reasonable cause for the stop[.]"

Tennessee Rule of Evidence 401 provides that evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence is typically admissible, while irrelevant evidence is inadmissible. Tenn. R. Evid. 402. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. The admissibility of evidence is within the sound discretion of the trial court, and this Court will not interfere with that discretion absent a clear showing of abuse of discretion. *See State v. Clayton*, 535 S.W.3d 829, 859 (Tenn. 2017). This Court finds an abuse of that discretion when the trial court applies "an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (quoting *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

In this case, the trial court did not abuse its discretion in allowing the proffered testimony to explain why the officers were responding to Ms. Johnson's home and reason for seeking to stop the defendant. The officers' testimony provided background for the evading arrest charge and was properly admitted. The defendant's claim that hearing the term "domestic disturbance" caused the jury to base its verdict "off emotion and not the proof" is without merit as the trial court specifically limited how much information the State could elicit about the underlying 911 call and the vast majority of the proof centered on the ensuing high-speed chase. Having reviewed the record, specifically the way in which the proof was presented, we determine that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, and the trial court did not abuse its discretion.

## II. Invocation of Fifth Amendment Right

The defendant next argues that the trial court erred in not allowing a witness, Ms. Johnson, to assert her Fifth Amendment right not to testify when the State had informed her that she would be held in contempt if she did not testify. The State responds that the

defendant's claim is without merit as he cannot vicariously assert another's privilege against self-incrimination.  We agree with the State.

The record shows that Ms. Johnson was the first witness called to testify at trial.  Towards the beginning of Ms. Johnson's testimony, the State asked her if the defendant came to her home around 9:00 a.m. on February 28, 2023.  Ms. Johnson answered, "Out of fear of prosecution, I plead the fifth."  The trial court called a jury-out hearing, during which the following exchange occurred:

> THE COURT: Ma'am, you have attempted to invoke your right not to answer questions under the fear that what you say may be used against you in a criminal prosecution.  [STATE], is Ms. Johnson under criminal prosecution for her involvement in [the defendant]'s charges at all?
>
> [STATE]: No, Your Honor.  However, just like any other witness, should she testify falsely, yes, she could subject herself to criminal prosecution.
>
> THE COURT: Right.  But at this moment, there are no pending charges, no anticipated charges there.
>
> [STATE]: No, sir.
>
> THE COURT: Okay.  [DEFENSE], do you have any input on this, sir?
>
> [DEFENSE]: No, Your Honor.
>
> THE COURT: Ms. Johnson, you're not under the threat of prosecution, ma'am.  You're gonna answer the question in this, or you're gonna be held in contempt of court, which may result in you being taken into custody.  So, that's kind of where we are with things.  You're going to need to answer the questions.  Do you understand that?
>
> MS. JOHNSON: Uh-huh.
>
> THE COURT: That's not a good answer.  It's either yes or no.
>
> MS. JOHNSON: Yes, sir.
>
> THE COURT: Thank you very much.  Okay.

After the exchange, the State sought permission to treat Ms. Johnson as a hostile witness and to explore in front of the jury the reason for her hostility. The court elected not to make a preemptive ruling and, instead, stated: "Let's just see how far we get, then I'll deal with it effectively." Ms. Johnson then asked for permission to speak to the court, recounting that she had talked to the State after a pre-trial proceeding, and the State informed her that she did not need to be afraid of testifying but that she would be held in contempt and treated as a hostile witness if she did not comply. The court informed Ms. Johnson that it was her obligation "to answer all questions truthfully. Whatever the answer is, you answer the question truthfully, and we won't have a problem."

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. However, the Fifth Amendment privilege against self-incrimination is personal and cannot be vicariously asserted. *Rogers v. United States*, 340 U.S. 367, 371 (1951). "A criminal defendant lacks standing to complain of the violation of a third party's Fifth Amendment privilege against self-incrimination." *State v. Austin*, 87 S.W.3d 447, 479 (Tenn. 2002), *abrogated on other grounds by State v. Miller*, 638 S.W.3d 136 (Tenn. 2021); *State v. Hardy*, 2009 WL 2733821, at *6 (Tenn. Crim. App. Aug. 31, 2009).

The defendant claims that the trial court violated Ms. Johnson's privilege against self-incrimination, but this privilege belongs to Ms. Johnson and not the defendant. As such, the defendant lacks standing to raise this claim and is not entitled to relief.

## III.  Closing Argument – Plain Error

Acknowledging that he did not make a contemporaneous objection, the defendant lastly argues that the trial court committed plain error in allowing the prosecutor to misstate the evidence during closing argument. The State responds that the defendant has failed to establish all five elements for entitlement to plain error relief. We agree with the State.

An appellate court may review an unpreserved error pursuant to the plain error doctrine, if the defendant bears his or her burden to show that all five prerequisites are satisfied:

> (1) The record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

- 6 -

*State v. Dotson*, 450 S.W.3d 1, 49 (Tenn. 2014) (quoting *State v. Gomez*, 239 S.W.3d 733, 737 (Tenn. 2007)). "To rise to the level of plain error, [a]n error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding." *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016) (alterations in original) (internal quotation marks omitted) (quoting *State v. Banks*, 271 S.W.3d 90, 127 (Tenn. 2008)). "If a defendant fails to establish any of these criteria, an appellate court must deny relief under the plain error doctrine, and an appellate court need not consider all criteria when the record demonstrates that one of them cannot be established." *State v. Vance*, 596 S.W.3d 229, 254 (Tenn. 2020).

During closing argument, the State asserted that the defendant was driving the truck involved in the chase and that the elements of evading arrest were met beyond a reasonable doubt. In his closing argument, the defendant focused his argument on identification. The defendant conceded that Ms. Johnson identified him as being at her house on February 28, 2023, and that he arrived at Ms. Johnson's house in a vehicle matching the description of a "distinct looking truck" with a license plate that stated, "Nance." However, the defendant asserted that there was no testimony "placing him in that truck" during the pursuit and suggested that perhaps Ms. Johnson was driving the truck. Thereafter, in its rebuttal closing argument, the State argued that the defendant was the person driving the truck, stating:

> The truck didn't drive itself, and if you recall me asking questions to the young lady, Ms. Natalie Turner/Johnson, I asked her about, does she recall later, after the pursuit was over, and Detective, excuse me, Deputy Maiden came to her house and asked her some questions about things, and she said yeah. So, I think the implication that maybe Ms. Turner was driving the truck is misdirected at best. The testimony was clearly that she was still at her house after the pursuit was over, and the officers came back to interview her, because they didn't have time while [the defendant] was fleeing from the police. Thank you.

Closing arguments are an important tool during trial, so attorneys are given a wide-range of autonomy when making them, and the trial court has a wide-range of discretion when controlling them. *See State v. Carruthers*, 35 S.W.3d 516, 577-78 (Tenn. 2000). "Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." *State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). It is possible for five general areas of prosecutorial misconduct to occur during closing arguments:

> (1) Intentionally misleading or misstating the evidence; (2) expressing a personal belief or opinion as to the truth or falsity of the evidence of the

defendant's guilt; (3) making statements calculated to inflame the passions or prejudices of the jury; (4) injecting broader issues than the guilt or innocence of the accused; and (5) intentionally referring to or arguing facts outside the record that are not matters of common public knowledge.

*Id.* "In determining whether statements made in closing argument constitute reversible error, it is necessary to determine whether the statements were improper and, if so, whether the impropriety affected the verdict." *State v. Pulliam*, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996).

We determine that, at a minimum, the defendant has failed to prove that the trial court breached a clear and unequivocal rule of law. In the defendant's view, the prosecutor intentionally misled or misstated the evidence because the State did not directly ask Ms. Johnson if she recalled a conversation with Deputy Maiden that occurred after the pursuit. However, the record shows that the State did ask Ms. Johnson if she recalled telling Deputy Maiden that the defendant beat on her car windows and doors, that the defendant had said to her "I don't care if I go to jail, I'm not leaving," and that the defendant said, "Oh shi*t, your mom is here" when her mother arrived. Based on Deputy Maiden's testimony concerning his initial arrival at Ms. Johnson's house and immediate involvement in a pursuit, it is a fair inference that any conversation Deputy Maiden had with Ms. Johnson logically had to have occurred after the pursuit. The State's final closing argument was within the bounds of the "great latitude" given to parties' in arguing their cases to the jury, s*ee Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975), and not a breach of a clear and unequivocal rule of law. The defendant has not shown entitlement to plain error relief.

Somewhat confusingly, the defendant alleged within the subtitle to this issue that "the evidence presented at trial preponderate[s] against the verdict." He later appears to suggest that without the State's misstatement of the evidence, the evidence would have been insufficient for the jury to find beyond a reasonable doubt that he was driving the truck. However, the defendant provided no authorities regarding such assertion or any argument beyond its de minimis inclusion. Therefore, to the extent the defendant attempted to raise a standalone sufficiency claim, it is inadequately briefed and waived. *See* Tenn. Ct. Crim. App. R. 10(b).

To the extent the defendant intended to allege that the impropriety of the prosecutor's statement affected the verdict for purposes of plain error review, we determine that the record does not support such claim. Even assuming the State's argument was improper, the proof showed that the defendant arrived at Ms. Johnson's house in a distinctive truck with a personalized license plate, and although no witness could specifically identify the defendant as the driver during the pursuit, it was a rational inference from the evidence that the defendant was the driver. Moreover, contrary to any

suggestion by the defendant that the prosecutor's statement carried the weight of evidence, we reiterate that "statements and arguments of counsel are neither evidence nor a substitute for testimony."  *Elliott v. Cobb*, 320 S.W.3d 246, 250 (Tenn. 2010).  The defendant is not entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.


s/ J. ROSS DYER
J. ROSS DYER, JUDGE