IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 4, 2009

## STATE OF TENNESSEE v. STEPHEN LOUIS YOUNG

**Direct Appeal from the Circuit Court for Decatur County**
**No. 06-CR-288     C. Creed McGinley, Judge**

_____

**No. W2008-01885-CCA-R3-CD  - Filed January 15, 2010**

_____

A Decatur County jury found the defendant, Stephen Louis Young, guilty of one count of rape of a child, a Class A felony, and one count of aggravated sexual battery, a Class B felony.  The court sentenced the defendant to twenty-five years for rape of a child to be served concurrently with twelve years for aggravated sexual battery at 100% in the Tennessee Department of Correction.  On appeal, the defendant argues that (1) the district attorney's comments during closing arguments constituted prosecutorial misconduct; (2) the trial court erred in sentencing the defendant; and (3) the trial court erred in ruling that the defendant's confession was voluntary.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Thomas T. Overton, Nashville, Tennessee, for the appellant, Stephen Louis Young.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Hansel J. McCadams, District Attorney General; and Beth Boswell-Hall, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Background

In October 2006, the Decatur County Grand Jury indicted the defendant on charges of rape of a child and aggravated sexual battery.  The matter went to trial in May 2008, and the following testimony was presented.

The events underlying the charges began in August 2005. The minor victim, J.E.,[1] was six years old and lived with her aunt, who had custody of her. She visited her grandmother and her step-grandfather, the defendant, on some weekends. J.E. testified that between August 2005 and December 2005, the defendant touched her "private" both over and under her clothes, and outside and inside her "private." On one occasion, he touched her "private" with his mouth. In December 2005, J.E. told her aunt some of what the defendant had done. Her aunt reported what J.E. had told her to J.E.'s counselor. Over the course of time, J.E. told her counselor what the defendant had done, but she never told her aunt the full story. J.E. also revealed what happened to her to a representative of the Henderson County Department of Children's Services in an interview at the Carl Perkins Center.

Sue Ross, a nurse practitioner, examined J.E. at Our Kids, an outpatient facility of General Hospital in Nashville, and discovered that J.E. had labial adhesions that made it impossible for her to conduct a full examination. The labial adhesions were not related to the allegations of sexual abuse and left only a small opening through which urine could pass. J.E. returned to Our Kids after several weeks of applying medication for the labial adhesions. Ms. Ross was then able to conduct a full examination, finding that there were no tears in J.E.'s hymen, and her genital structure was normal. Ms. Ross testified that it was common for there to be no physical findings with allegations of digital or oral contact. In the course of the examinations, J.E. made statements indicating that the defendant penetrated her with his finger. Ms. Ross opined that a small finger could have penetrated the small opening left by the labial adhesions.

Agent Cathy Ferguson, of the Tennessee Bureau of Investigation ("TBI"), interviewed the defendant at his home on August 9, 2006. At that time, he gave a written statement that he might have touched J.E.'s genital area by accident. Agent Ferguson testified that TBI's policy is that the agent writes down what the suspect says, and then the suspect reviews the statement and either makes corrections or signs off on the statement. The defendant made no corrections to what Agent Ferguson had written down, and he initialed each paragraph and signed his name at the bottom of the page. Agent Ferguson gave him her number to call if he had anything else to say. The same day, he called Agent Ferguson to set up a second interview. On August 17, 2006, Agent Ferguson met the defendant at the Parsons Police Department. She and another TBI agent Mirandized the defendant, and he waived his rights. He gave a sworn statement that J.E. had been "sexually aggressive" towards him, and she placed his hand on her vagina. He further said that he tried to put his finger inside her vagina but was only able to insert his fingertip. He put his mouth on her vagina once. After giving the statement, the defendant initialed each paragraph and signed his name at the bottom of

---

[1] It is the policy of this court to refer to minor victims of sexual assault by their initials.

the page. After leaving the police department, the defendant was arrested later that day by Agent Ferguson.

At trial, the defendant testified that Agent Ferguson made up what was in the second statement. He admitted to signing the statement but said that he was visually impaired and unable to read what he was signing. He denied ever touching J.E. in a sexual manner.

The jury convicted the defendant of one count of rape of a child and one count of aggravated sexual battery. After a sentencing hearing, the trial court sentenced the defendant to twenty-five years for rape of a child and twelve years for aggravated sexual battery to be served concurrently at 100% in the Tennessee Department of Correction. The trial court denied the defendant's motion for new trial, and the defendant filed this timely appeal.

**Analysis**

1. Involuntary Confession

The defendant challenges the admissibility of his August 17, 2006 statement to TBI agents. Specifically, the defendant argues that the trial court erred in ruling that his statement was admissible because his confession was involuntary. He contends that the TBI agents created a coercive atmosphere. The state responds that the defendant waived the claim by not properly preserving it for appeal. We agree with the state.

The record on appeal contains a motion by the defense to suppress the statement that the defendant made to the TBI, but the record is void of an order disposing of the motion, a transcript of a suppression hearing, or even a reference to a suppression hearing. It is the duty of the defendant to provide a record that conveys a fair, accurate and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). "In the absence of an adequate record we must presume that the trial court's ruling was adequately supported by the record." *State v. Beech*, 744 S.W.2d 585, 588 (Tenn. Crim. App. 1987). Additionally, the defendant did not make a contemporaneous objection when Agent Ferguson testified regarding the statement. The Tennessee Rules of Appellate Procedure require a party to be proactive about limiting the harmful effect of an error. *See* Tenn. R. App. P. 36(a). The defendant has not adequately preserved this issue for appeal and has thereby waived this claim.

2. Prosecutorial Misconduct

The defendant argues that the state prosecutor made improper comments during closing arguments and that those comments rendered his trial unfair. The state responds that the comments were not so improper as to detrimentally affect the jury's verdict because of

preventative measures taken by the court and opposing counsel. The state further contends that the defendant has waived claims to alleged instances of misconduct to which he did not make contemporaneous objections.

In his brief, the defendant lists many instances of alleged misconduct during closing arguments. However, counsel only objected to the prosecutor's use of the term "pervert" in relation to the defendant and did not include any other instance of alleged misconduct in his motion for new trial. Under the Tennessee Rules of Appellate Procedure, parties risk waiver of a claim by not taking reasonable actions to prevent the harmful effect of an error and by not including an alleged error in their motions for new trial. Tenn. R. App. P. 3(e), 36(a). Therefore, for purposes of this appeal, we consider only the claim that the prosecutor's comment that the defendant was a "pervert" rendered the defendant's trial unfair.

It has long been recognized that "closing argument is a valuable privilege that should not be unduly restricted." *State v. Bane,* 57 S.W.3d 411, 425 (Tenn. 2001) (citing *State v. Bigbee,* 885 S.W.2d 797, 809 (Tenn. 1994)). However, closing argument "must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." *State v. Middlebrooks,* 995 S.W.2d 550, 557 (Tenn. 1999). Notably, the scope of closing argument is subject to the trial court's discretion and will not be reversed absent a clear showing of abuse of discretion. *See State v. Cauthern,* 967 S.W.2d 726, 737 (Tenn. 1998); *Smith v. State,* 527 S.W.2d 737, 739 (Tenn. 1975).

When determining whether the prosecutor's misconduct constitutes reversible error, this court considers whether the conduct was so improper or the argument so inflammatory that it prejudicially affected the jury's verdict. *See Middlebrooks,* 995 S.W.2d at 559; *State v. Goltz,* 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). In measuring the prejudicial effect of an improper argument, this court considers the following factors: "(1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case." *Goltz,* 111 S.W.3d at 5-6.

In this case, the prosecutor's comment that the defendant was a "pervert" was improper because a prosecutor should refrain from using epithets to characterize a defendant. *Cauthern,* 967 S.W.2d at 737. However, we cannot say that the comment was so improper as to prejudice the jury's verdict. First, defense counsel immediately objected after the prosecutor called the defendant a "pervert." The trial court sustained the objection, ruling that the comment was an inappropriate reference. Defense counsel did not request any limiting instruction, but in his own argument, he used the same term, telling the jury that the

state was "playing on your sympathy." In its instructions to the jury, the court reminded the jurors that "[they could] have no prejudice or sympathy, or allow anything but the law and the evidence to have any influence upon [their] verdict." Secondly, while we cannot deduce the prosecutor's intent from the record, there is no evidence that the prosecutor acted maliciously. Finally, the state presented a relatively strong case unmitigated by other allegations of error or misconduct. J.E.'s testimony that she was abused by the defendant was corroborated by the defendant's own statement. Therefore, we conclude that the defendant has not met his burden of proving that the prosecutor's comments prejudiced the jury's verdict and is not entitled to relief on this issue.

3. Sentencing

Finally, the defendant challenges his sentence length for the aggravated sexual battery conviction. Specifically, the defendant argues that the trial court erred by applying the enhancement factor "the desire for gratification" to count two of the indictment because that factor is an element of the offense. The state counters that the court explicitly did not apply that enhancement factor to count two.

When a defendant challenges the length and manner of service of a sentence, this court conducts a *de novo* review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401. "[T]he presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *See id*. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts. We will uphold the sentence imposed by the trial court if (1) the sentence complies with our sentencing statutes, and (2) the trial court's findings are adequately supported by the record. *See State v. Arnett,* 49 S.W.3d 250, 257 (Tenn. 2001); *see also* Tenn. Code Ann. § 40-35-210(f).

Aggravated sexual battery is a Class B felony. Tenn. Code Ann. § 39-13-504(b). The sentence range for a standard offender convicted of a Class B felony is eight to twelve years. Tenn. Code Ann. § 40-35-112(a)(2). Therefore, the applicable range for the defendant on the aggravated sexual battery conviction was eight to twelve years. On appeal, the defendant has the burden of illustrating that the sentence imposed by the trial court is erroneous.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the

principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); *State v. Taylor,* 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). Enhancement factors may be considered only if they are "appropriate for the offense" and "not already an essential element of the offense." Tenn. Code Ann. § 40-35-114.

In sentencing a defendant, prior to the 2005 amendments to the 1989 Sentencing Act, a court was to begin at the mid-point of the statutory range and then apply the appropriate enhancement and mitigating factors. Pursuant to the 2005 amendments, our Sentencing Act has abandoned the statutory minimum sentence and renders enhancement and mitigating factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, -35-210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" which the trial court is not bound by, but is required to consider. *See* Tenn.Code Ann. § 40-35-210(c). Although the application of factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court is also required to place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e).

After considering the presentence report, the evidence presented at trial, and the evidence presented at the sentencing hearing, the court found that the defendant was a standard offender because he had no prior criminal activity. The court then applied enhancing factors from Tennessee Code Annotated section 40-35-114. The court found that "the offense involved the victim and was committed to gratify the [d]efendant's desire for pleasure or excitement," but the court stated that it would not consider this enhancement factor for count two of the indictment because the factor is an element of aggravated sexual battery. The court further found that the defendant abused a position of private trust because he was J.E.'s step-grandfather. Finally, the court considered mitigation factors because of testimony that the defendant was a good employee and had no criminal record but concluded that the mitigating factors "[were] so far outweighed by the enhancing factors that the [c]ourt [found] them not particularly persuasive." The court found that the defendant should be sentenced to twelve years for aggravated sexual battery.

The record reveals that the trial court considered the relevant sentencing guidelines and the facts and circumstances of the case. Additionally, the record supports the trial court's finding that the defendant abused a position of private trust. The defendant only had access to J.E. because she was his step-granddaughter. Accordingly, we conclude that the trial court

did not abuse its discretion in sentencing the defendant to twelve years for aggravated sexual battery.  The defendant is not entitled to relief on this issue.

## Conclusion

Based on the foregoing reasons, we affirm the judgments of the trial court.


_____
J.C. McLIN, JUDGE