# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 5, 2011

## STATE OF TENNESSEE v. TERRY ROBINSON

**Direct Appeal from the Circuit Court for Madison County**
**No. 09-213    Donald H. Allen, Judge**

**No. W2010-00145-CCA-R3-CD  -  Filed March 16, 2011**

The defendant, Terry Robinson, was convicted by a Madison County Circuit Court jury of theft of property over $10,000, a Class C felony, and sentenced to ten years in the Department of Correction as a Range II offender. On appeal, he argues that the State committed prosecutorial misconduct in its rebuttal closing argument, and he challenges the sufficiency of the convicting evidence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, for the appellant, Terry Robinson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; James G. Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted on the charge of theft of property over $60,000 as a result of his selling several of his employer's manufacturing tools to a scrap metal recycling center. At trial, Robert Sharra, Operations Manager for Foam Fabricators, a manufacturing facility in Madison County, testified that the defendant worked for Foam Fabricators as a temporary employee from September 4 until October 6, 2008. Sharra said that, periodically, their customers authorize Foam Fabricators to scrap tools no longer in use, and the money

received from the recycling center is deposited into a fund for employee bonuses. Sharra stated that he was the only one authorized to take scrapped tools to a recycling center and that he never let other employees, including the defendant, do that for him. Sharra never used S.M.C. Recycling, a recycling center in Selmer, because he preferred to "stay close to the local economy."

Sharra testified that he noticed that a tool was missing in September 2008, which led him to conduct an inventory in November that revealed at least fourteen tools were missing. Based on when the tools were last used, Sharra determined that they were stolen sometime between August and November. Using old invoices, Sharra estimated that the cost to replace the stolen tools was $159,506. He explained that the tools were heavy-duty items that retained their value. In an effort to investigate who had stolen the tools, Sharra took photographs of similar tools to local recycling centers. Sharra discovered that the items had been scrapped at S.M.C. Recycling.

Kevin Roberts, an employee of S.M.C. Recycling, testified that the defendant came into S.M.C. "several times" between September and November 2008 to sell scrap metal. Roberts had a receipt showing where the defendant sold a 591-pound piece of equipment to S.M.C. on September 22, 2008. Roberts said that the defendant was alone on one or two occasions and accompanied by Eldon Rogers the other times. However, Rogers never came without the defendant. Sometimes the men requested that the check be made out to the defendant and other times made out to Rogers. Roberts identified three receipts in Rogers' name, dated September 11, 24, and 30, 2008. Roberts recalled that Sharra came to the center and showed him photographs of items. Roberts told Sharra that "it hadn't been long ago that [he]'d bought some materials that looked just like that." On cross-examination, Roberts admitted that he gave a statement to a police investigator several months before trial in which Roberts said that he recalled seeing the defendant and Rogers at the recycling center on "[a]t least two" occasions.

Eldon Rogers, the co-defendant, testified that he worked at Foam Fabricators approximately one year before the thefts. At that point, he and the defendant had been friends for twenty years. Rogers admitted that he had taken items from a recycling dumpster at Foam Fabricators without permission and had the items recycled at S.M.C. Rogers said that the defendant was with him on one or two occasions, but the other times he went alone. According to Rogers, the defendant was aware that the goods were stolen and received half of the proceeds. Rogers said that the defendant also called him a few times about taking some items to S.M.C.

On cross-examination, Rogers admitted that he had pled guilty to stealing items from Foam Fabricators and had received a sentence of twelve years on probation. Rogers said

that he had gone to S.M.C. Recycling about eight or nine times, and the defendant was with him only on one or two occasions. He said that Kevin Roberts was incorrect if he said that Rogers never brought things to the recycling center without the defendant. On redirect examination, Rogers stated that there were occasions when he saw items from Foam Fabricators in the defendant's truck and that he had not helped the defendant put those items in the truck.

After the conclusion of the proof, the jury found the defendant of guilty of theft of property in an amount greater than $10,000 but less than $60,000.

## ANALYSIS

### I. Prosecutorial Misconduct

The defendant argues that the prosecutor committed prosecutorial misconduct in his rebuttal closing argument. He asserts that the prosecutor's statement that the defendant failed to admit his guilt while the co-defendant pled guilty was improper because the defendant had the right to remain silent and require the State to prove his guilt. He also complains that the court "issued neither a definitive ruling on the objection nor a curative instruction to the jury based on the State's argument."

Toward the end of the State's rebuttal, the prosecutor stated, "Again, Foam Fabricators is out $159,000 because of what these two did. One has accepted responsibility and the other has left it to you to say that he's guilty. He won't admit it on his own even though the evidence against him is overwhelming[.]" Defense counsel asked for a sidebar conference at which point he objected to the prosecutor's "saying that [the defendant is] guilty of this," explaining, "I just don't think that's an appropriate comment to say that he's guilty because he does have a right to a trial." The court observed, "I think it's pretty obvious. I mean, he's entered a not guilty plea."

Tennessee courts "have traditionally provided counsel with a wide latitude of discretion in the content of their final argument" and trial judges with "wide discretion in control of the argument." State v. Zirkle, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995). A party's closing argument "must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Middlebrooks, 995 S.W.2d 550, 557 (Tenn. 1999). The five generally recognized areas of prosecutorial misconduct in closing argument occur when the prosecutor intentionally misstates the evidence or misleads the jury on the inferences it may draw from the evidence; expresses his or her personal opinion on the evidence or the defendant's guilt; uses arguments calculated to inflame the passions or prejudices of the jury; diverts the jury

from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions on the consequences of the jury's verdict; and intentionally refers to or argues facts outside the record, other than those which are matters of common public knowledge. State v. Goltz, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003).

For a defendant to be entitled to a new trial on the basis of allegedly improper remarks during the closing argument, they must be shown to have prejudiced the case by affecting the jury's verdict. Middlebrooks, 995 S.W.2d at 559. In determining whether this occurred, we consider the following factors: (1) the conduct viewed in light of the circumstances and facts in the case; (2) any curative measures taken by the trial court and the prosecution; (3) the prosecutor's intent in making the improper statements; (4) the cumulative effect of the prosecutor's statements and other errors in the record; and (5) the relative strength and weakness of the case. Id. at 560.

After reviewing these factors, we cannot conclude that the prosecutor's statement prejudiced the defendant's case. The complained-of comment was very brief, amounting to approximately four lines out of a closing argument and rebuttal that spanned more than twenty-five pages. The statement was geared toward showing the defendant's guilt by the fact that his co-defendant had pled guilty and there had been testimony that he and the co-defendant were partners in the enterprise. There were no curative measures taken, but the defendant never requested a curative instruction or "definitive" ruling at the time the statement was made. Proof of the defendant's guilt was rather strong, consisting of the incriminating testimony of his co-defendant and corroborating testimony of the recycling center employee. Accordingly, we conclude that any error in the prosecutor's argument did not affect the jury's verdict.

## II. Sufficiency of the Evidence

The defendant challenges the sufficiency of the convicting evidence. Specifically, he argues that the accomplice testimony was uncorroborated and that the value of the stolen goods was not proven to be more than $10,000. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the

credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To sustain the theft conviction in this case, the State had to prove beyond a reasonable doubt that the defendant, with the intent to deprive the owner of property, knowingly obtained or exercised control over property without the owner's effective consent and that the value of the property was between $10,000 and $60,000. Tenn. Code Ann. §§ 39-14-103, -105(4) (2006). Tennessee Code Annotated section 39-11-106 defines "value" as "(i) [t]he fair market value of the property or service at the time and place of the offense; or (ii) [i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" Id. § 39-11-106(a)(36)(A). The fair market value of property is a question of fact for the jury. See State v. Hamm, 611 S.W.2d 826, 828-29 (Tenn. 1981). "The market value of the article stolen, and not its original cost, is the true criterion when it is necessary to establish the value of the property in order to fix the grade of the offense[.]" Id. at 829 (internal citation omitted).

A criminal defendant in Tennessee cannot be convicted solely on the uncorroborated testimony of an accomplice. State v. Bane, 57 S.W.3d 411, 419 (Tenn. 2001) (citing State v. Stout, 46 S.W.3d 689, 696 (Tenn. 2001); State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994)). This principle has been described as follows:

"[T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration."

Bigbee, 885 S.W.2d at 803 (quoting State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992)). Whether sufficient corroboration exists is for the jury to determine. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001).

In the light most favorable to the State, the evidence shows that between August and November 2008, at least fourteen tools were stolen from Foam Fabricators. When the operations manager, Robert Sharra, took photographs of similar tools to local recycling centers, S.M.C. Recycling employee, Kevin Roberts, recalled having recently purchased similar items from the defendant. Roberts recalled the defendant selling scrap metal on approximately seven different occasions – once or twice alone and five times with Eldon Rogers. Specifically, S.M.C. had receipts showing where the defendant was paid for a 591-pound piece of equipment on September 22, 2008, and Rogers was paid for items on September 11, 24, and 30, 2008. Rogers admitted that he and the defendant stole tools from Foam Fabricators and split the proceeds equally. The defendant's argument that there was insufficient evidence to corroborate Rogers' testimony is without merit. As detailed above, Roberts' independent testimony, although not extending to every part of the co-defendant's testimony, sufficiently corroborated Rogers' testimony as determined by the jury.

With regard to the value of the stolen goods, we conclude that there was sufficient evidence for a rational trier to fact to determine that the value was more than $10,000. The defendant asserts that the proof shows that he was involved in at most four transactions, the value of which does not meet the threshold of $10,000. However, Robert Sharra testified that there were fourteen tools stolen – the replacement value of which was more than $159,000. Kevin Roberts testified that the defendant, either alone or with Rogers, sold scrap metal on approximately seven occasions. Thus, the jury had before it, in light of the total number of items stolen and the number of times the defendant was observed selling scrap

metal, sufficient evidence to conclude that the defendant was involved in the theft of property having the fair market value of more than $10,000.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE