# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 8, 2011 Session

## STATE OF TENNESSEE v. RITA WHITE

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2008-CR-885      Robert E. Burch, Judge**

---

**No. M2010-01079-CCA-R3-CD - Filed July 7, 2011**

---

The Defendant, Rita White, was convicted by a Dickson County Circuit Court jury of driving under the influence (DUI), a Class A misdemeanor, and pled guilty to failure to obey a required traffic control device, a Class C misdemeanor. See T.C.A. §§ 55-10-401 (Supp. 2009) (amended 2010), 55-8-109 (2010). She was sentenced to eleven months and twenty-nine days for the DUI conviction, with ten days to be served in confinement and the remainder on probation. She was sentenced to thirty days' probation for the traffic device conviction, to be served concurrently with the DUI sentence. On appeal, the Defendant contends that (1) the evidence was insufficient to support the conviction, (2) the trial court erred by denying her motion to suppress evidence, and (3) the trial court erred by denying her motion for a new trial based on prosecutorial misconduct during closing argument. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Kenneth D. Quillen, Nashville, Tennessee, for the appellant, Rita White.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Senior Counsel; Dan M. Alsobrooks, District Attorney General; and Kelly Jackson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At the trial, Dickson Police Corporal Josh Ethridge testified that he had worked as a police officer for about six years and that he had worked previously as a corrections officer and bailiff. He said that at about 4:00 p.m. on July 11, 2008, his patrol car was two cars

behind the Defendant's PT Cruiser when he saw the Defendant run a red light at the intersection of Walnut and Center Avenue in Dickson. He said the Defendant stopped when he activated his emergency lights.

Corporal Ethridge testified that he approached the Defendant and told her he stopped her for running a red light. He said that the Defendant told him the light was yellow and that he told her again the light was red. He said the Defendant offered no other explanation for running the red light. He said that he smelled alcohol and that he at first could not tell if the odor came from the Defendant or from inside the car. He said that as the Defendant spoke, he decided the odor came from her. He said that he asked the Defendant if any alcohol was in the car and that she said no. He said he later searched the car and found an unopened can of beer in a brown paper bag and a crushed empty beer can.

Corporal Ethridge testified that he asked the Defendant more than once if she had been drinking because he did not believe her denial. He said that the Defendant's husband was a passenger in the car and that her husband admitted to drinking that day. He agreed he was sure that the alcohol odor came from the Defendant and not the passenger. He said that after he asked the Defendant several times if she had been drinking, the Defendant admitted to drinking one beer.

Corporal Ethridge testified that he asked the Defendant to perform field sobriety tests: (1) the nine-step, walk-and-turn test and (2) the one-legged stand. He said that he first asked the Defendant if she had any physical disabilities that could affect her performance on the tests and that she said she did not. He said that he demonstrated the nine-step, walk-and-turn test and that the Defendant said she understood. He demonstrated the test for the jury and explained the instructions he usually gave to a DUI suspect. He said that the Defendant exhibited five out of eight possible clues of intoxication and that her overall performance was poor. He said she lost her balance during the instruction phase, failed to touch her heel to her toe while walking, stepped off the line, used her arms to keep her balance, and turned improperly.

Corporal Ethridge testified that he demonstrated the one-legged stand for the Defendant. He demonstrated this test for the jury and explained the instructions he generally gave to a suspect. He said that the Defendant performed poorly on the test and that she exhibited three indicators of impairment. He said she swayed while standing on one leg, held her foot off the ground for only a couple of seconds at a time, and used her arms for balance.

Corporal Ethridge testified that he arrested the Defendant for DUI. He said that he remembered some discussion of having the Defendant's car towed and that he would not let the passenger drive because the passenger admitted drinking five beers that day. He said that

he transported the Defendant to the Dickson Police Department and that he read an implied consent form to her. He said she refused to take a breath or blood test. He identified a copy of the Defendant's implied consent form and said it showed her signature by her refusal.

The State played a DVD recording of the traffic stop. Officer Ethridge testified that the recording showed the Defendant's driving through the red light, stopping for his emergency lights, and talking to him as he came to her window. He said that he made a pat-down search because the Defendant had a knife in her pocket and that he was ensuring there were no other weapons. He said that Dickson Police Officer Mason Albright was also at the traffic stop and that he asked Officer Albright to pat down the Defendant's husband for weapons. He said that the object in his hand in the recording was the knife he took from the Defendant and that the recording later showed him giving the knife to the Defendant's husband.

Corporal Ethridge testified that he asked the Defendant if any alcohol was in the car and that she said no. He stated that when his search revealed the can of beer, the Defendant said it was unopened. He said that the DVD recording showed an unopened beer sitting on the back bumper of the Defendant's car and that the beer was the one found during his search. He said the DVD showed the Defendant listening to instructions for the first field sobriety test. He said the audio on the recording did not work for a portion of the stop because of an equipment malfunction.

On cross-examination, Corporal Ethridge identified still photographs taken from the recording of the traffic stop. Defense counsel played a portion of the DVD recording, and Corporal Ethridge testified that the Defendant kept her car in the proper lane, used the car's right blinker, and stopped safely. He agreed the only problem with the Defendant's driving was that she ran the red light.

Corporal Ethridge agreed that as the Defendant walked from her car to the patrol car, she was steady on her feet. He agreed the Defendant stood heel-to-toe for about one minute and fifteen seconds while she listened to instructions for the first field sobriety test, but he said she lost her balance before he finished giving instructions. He said he did not tell the Defendant he was looking for clues during the instruction phase. He denied that it became more difficult for a person to stand on the line the longer he or she had to stand.

Corporal Ethridge identified photographs of him patting down the Defendant. He identified other photographs and said they showed the Defendant sitting on the patrol car's front bumper as he administered a nystagmus test. He said that his finger was raised above the Defendant's head but that because the Defendant was looking up at him, his finger was actually at her eye level.

Corporal Ethridge testified that he did not bring to court his training materials used for field sobriety testing. The trial court stated that Corporal Ethridge received a subpoena, served on April 7, 2010, to bring all written field sobriety testing instruction material to court. Corporal Ethridge said that he had received materials during training but that he could not find them. He agreed he received a letter from a member of defense counsel's firm, referring to the National Highway Traffic Safety Administration's D.W.I. Detection and Standardized Field Sobriety Student Manual, and two copies of the manual. He said that he received the materials about six months before the trial and that since then, he had moved and could not find the materials. He said he told the District Attorney's office that he could not find the materials.

Corporal Ethridge agreed that fine motor control was the first ability to become impaired by intoxication. He denied observing that intoxicated drivers had trouble signing documents and said he was not qualified to analyze the Defendant's signature. When asked if the ground where the Defendant performed the nine-step, walk-and-turn test was sloping, he said it was "low."

On redirect examination, Corporal Ethridge testified that he stopped the Defendant as soon as he safely could after she ran the red light. He agreed that on the DVD recording, the Defendant's husband showed about the same amount of difficulty walking as the Defendant and that her husband admitted to drinking five times more than the Defendant admitted she drank. He said the portion of the DVD played by defense counsel showed the Defendant standing before the nine-step, walk-and-turn test after losing her balance and being asked to stand again. He said both the Defendant's losing her balance and her forgetting the instruction to stand on the line were indicators of impairment.

Corporal Ethridge testified that he remained standing as the Defendant sat during the nystagmus test in order to avoid squatting in a vulnerable position close to the Defendant. He said that during the test, he was looking for equal tracking of both eyes and equal pupil size and that inequality and unequal tracking indicated impairment. He said that according to his training, only alcohol or major head trauma caused a person's eyes to shake involuntarily. He said that he asked the Defendant if she had suffered a head trauma and that she said no. He said that the Defendant's nystagmus was at forty-five degrees and that this indicated a higher degree of intoxication than nystagmus at full deviation. He said that during the nystagmus test, the Defendant's eyes lacked "smooth pursuit" or "bounced" across as she watched his finger. He said the Defendant showed every involuntary eye reaction that was an indicator of intoxication.

Corporal Ethridge testified that he did not purposefully dispose of the materials sent to him by defense counsel. He agreed he did not tell the prosecutor the materials were missing until the morning of the trial.

On recross-examination, Corporal Ethridge identified what he said appeared to be a copy of a National Highway Traffic Safety Administration manual. He agreed the manual stated that the position of the stimulus on a nystagmus test was "slightly above unknown." He agreed the manual stated that if an element of a field sobriety test were changed, the validity would be compromised.

The jury convicted the Defendant of DUI. The trial court sentenced her to eleven months and twenty-nine days, including ten days' confinement and the remainder on probation. This appeal followed.

**I**

The Defendant contends that the evidence was insufficient to support her DUI conviction.[1] Initially, the State contends that the Defendant waived this issue because it is unsupported by argument or citation to authorities in the Defendant's brief and because the appellate record does not contain the full recording of the traffic stop or the implied consent form, which were both introduced to the jury during Corporal Ethridge's testimony. The argument section for this issue in the Defendant's brief contains no citations to authority or reasons why relief is required beyond her contention that the evidence was insufficient.

We agree with the State that the Defendant's brief falls short of the requirements of Tennessee Rule of Appellate Procedure 27(a)(7), which requires an argument "setting forth the contentions of the appellant with respect to the issue presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on[.]" See also Tenn. Ct. Crim. App. R. 10(b). Notwithstanding this deficiency, the Defendant does include citations to the trial transcript and factual assertions that the evidence was insufficient because she made only one driving mistake of running the red light, pulled off the road safely, was steady on her feet while walking from her car to the patrol car, was able to stand heel-to-toe for one minute and fifteen seconds, and understood the implied consent form.

As for the completeness of the record, the Defendant has not included the full DVD recording or the implied consent form. When presented with an incomplete appellate record,

---

[1] Although the Defendant states in the introduction to her brief that she is appealing both convictions, she has not raised any issues regarding the conviction for failure to obey a required traffic control device.

this court must conclusively presume that the evidence was sufficient. See, e.g., State v. Draper, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990). In this case, though, we note that the incomplete record before us contains sufficient evidence to support the Defendant's conviction. The record contains the one-minute DVD excerpt, still photographs of the traffic stop, and Corporal Ethridge's testimony during direct examination, portions of which were elicited as he and the jury watched the full recording and as he identified the implied consent form.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

In the light most favorable to the State, the proof shows that Corporal Ethridge stopped the Defendant after observing her drive through a red light. The Defendant pled guilty to a separate charge of running the red light. She smelled of alcohol, performed poorly on two field sobriety tests, and admitted to drinking a beer. Corporal Ethridge found an unopened can of beer and a crushed beer can in the Defendant's car. Her credibility was undermined by her statements during the traffic stop regarding the color of the traffic light, whether she had been drinking, and whether alcohol was in the car. We conclude that a rational trier of fact could have found beyond a reasonable doubt that the Defendant was driving while under the influence of alcohol.

## II

The Defendant contends that the trial court erred by denying her motion to suppress evidence because her statements made at the time of the traffic stop were inadmissible. She argues that her Fifth Amendment right to counsel was violated when she was taken into custody and interrogated without Miranda warnings. See Miranda v. Arizona, 384 U.S. 436 (1966). The State contends that the Defendant's statements were admissible because a brief roadside stop does not place an individual into police custody. We agree with the State.

At the hearing on the motion to suppress, the Defendant testified that she was stopped by Corporal Ethridge in July 2008. Defense counsel played a one-minute excerpt from the DVD recording of the traffic stop. The Defendant said that Corporal Ethridge used his blue

lights to stop her and that she drove into the parking lot shown on the recording. She agreed that Corporal Ethridge wore a uniform and pistol and that his arms protruded into her car as he questioned her.

The Defendant testified that she heard, on the recording, Corporal Ethridge tell her to answer a question "yes" or "no." She said she thought at the time that she had to answer. She said that no one read Miranda warnings to her and that she did not understand what a Miranda warning included. She agreed Corporal Ethridge did not tell her that she had a right not to make statements.

On cross-examination, the Defendant testified that the officer stopped her because she "ran up under a yellow light." She said she was confident that the light was yellow and that she did not run a red light. She agreed that Corporal Ethridge asked her more than once if she had been drinking and that her first response was that she had not been. She agreed that he asked her a second time and that she told him she smelled like alcohol because she had dropped someone off who had been drinking. She agreed she said she had been drinking when he asked her a third time.

Corporal Ethridge testified at the suppression hearing to the same events surrounding the traffic stop as he did at the trial but with more detail about his questioning of the Defendant. He said that when he asked her to answer "yes" or "no" to his question about drinking, his intent was to obtain a truthful answer. He said he did not think the Defendant was truthful with him when she still denied drinking, and he agreed he often asked people questions more than once before they told the truth. He said he believed the Defendant when she said she had been drinking. He denied interrogating the Defendant and agreed his questioning was within the scope of questions he usually asked when he stopped a driver who smelled of alcohol. He said that he performed an eye test on the Defendant and that it revealed nystagmus.

On cross-examination, Corporal Ethridge testified that he did not administer the Miranda warnings to the Defendant. He agreed that after he stopped the Defendant, she was not free to go. He said he did not administer the full horizontal gaze and nystagmus test but only a simple nystagmus test. He said that he knew how to administer a nystagmus test and that when he did, he usually placed his finger above the driver's eye level. He agreed he did not know how far above eye level he was supposed to place his finger. On redirect examination, Corporal Ethridge testified that he did not doubt the reliability of the simple nystagmus test he gave the Defendant.

The trial court denied the motion to suppress evidence. The court stated that numerous cases hold that general on-the-scene questioning by officers without warnings is

proper and found that Officer Ethridge's questioning "did not amount to a custodial interrogation."

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Furthermore, questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The application of the law to the facts as determined by the trial court is a question of law, which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

A defendant's statements made during a custodial police interrogation are only admissible if the state establishes that the defendant was advised of certain constitutional rights, including the right to an attorney and the right to be silent. Miranda, 384 U.S. at 444. Miranda warnings are not required in the absence of custodial interrogation. State v. Northern, 262 S.W.3d 741, 749 (Tenn. 2008) (citing Miranda, 384 U.S. at 478).

The United States Supreme Court has held that persons temporarily detained pursuant to a traffic stop, even one involving some investigation regarding intoxication, are not "in custody" for the purposes of Miranda. Berkemer v. McCarty, 468 U.S. 420, 440 (1984). A traffic stop does constitute a Fourth Amendment seizure of individuals in the car. Id. at 436-37 ("Certainly few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so."). For the Fifth Amendment right to counsel during police interrogation to apply, however, the driver must be in custody such that she "was subjected to restraints comparable to those associated with a formal arrest." Id. at 443 (noting that a typical traffic stop is less coercive in nature than a police station interrogation because the stop is presumed to be a brief detention and is in a public place with police behavior in full view); see also State v. Snapp, 696 S.W.2d 370, 371 (Tenn. Crim. App. 1985) (holding that the defendant was not in custody for purposes of Miranda when police questioning occurred "at the scene of a traffic accident, on a public road, and before the defendant was transported away in a patrol car."); State v. Timothy A. Summers, No. E2007-02127-CCA-R3-CD, Union County, slip op. at 6 (Tenn. Crim. App. Oct. 13, 2008) (holding that the defendant was seized but was not in custody when he was stopped by police at a public parking lot, questioned, and asked to perform field sobriety tests).

The Defendant relies on the factors recited in State v. Anderson to support her argument that she was in custody when Officer Ethridge questioned her three times about her drinking that day. See 937 S.W.2d 851 (Tenn. 1996). The Defendant argues that she was

in custody because Corporal Ethridge's hand intruded into her car to administer the nystagmus test, because she did not feel free to leave, because the officer's tone was accusatory, and because she felt compelled to answer his questions. In Anderson, an arson case, our supreme court stated that the following non-exclusive factors were relevant to a determination of whether a defendant was in custody during questioning:

> the time and location of the questioning; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the scene of questioning; the number of police officers present; any limitation on movement or form of restraint placed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

Id. at 855.

In this case, Corporal Ethridge stopped the Defendant on a public road. The one-minute DVD excerpt prepared by defense counsel shows that the officer asked the Defendant three times if she had been drinking. These questions were asked while the Defendant was still in the driver's seat of her own car. The officer's voice was not raised. The Defendant's admission came after the officer said, "I believe you have been drinking. Tell me the truth. Don't lie to me, yes or no." When the officer's hand intruded into the Defendant's car, he asked her to follow his finger with her eyes. There is no evidence in the record that Corporal Ethridge threatened the Defendant with his hand or took hold of anything in the car or on her person. We conclude that the trial court did not err in finding that Corporal Ethridge's questioning was within the scope of a roadside traffic stop and that the Defendant was not in custody for purposes of Miranda during the questioning. The Defendant is not entitled to relief on this issue.

### III

The Defendant contends that the trial court erred by denying her motion for a new trial based on prosecutorial misconduct during closing argument. The State contends that the trial

court properly considered all relevant factors in determining that the prosecutor's improper statement did not affect the verdict. We agree with the State.

During closing argument, the prosecutor said:

> The State nor the Judge is asking you to pass judgment on Ms. White as a human being or as a person. What we are asking you to do is do your duty and apply the law to the facts of this case.
>
> I can't put you there beside Ms. White, so that she can breathe her beer breath on you, but I assure you that this officer has not testified falsely. He's a nice guy.

Defense counsel objected to the prosecutor's vouching for the witness. The trial court sustained the objection and said: "Yes, you're vouching for a witness, that's improper. Ladies and gentlemen, you should disregard that." Defense counsel moved for a mistrial. Outside the presence of the jury, the trial court listened to argument and then denied the motion.

When the jury returned, the trial court gave the following curative instruction:

> Just before you went out, you heard the General say something like, "I assure you that he spoke the truth," or something of that nature.
>
> That is what we refer to in the law as prosecutorial misconduct. That is – and in the way I describe it, it's a no, no. The lawyers are told not to do that. Particularly the Attorney General's Office is told not to – it's called vouching for a witness, you know. We say that what this witness [said] is true and we're putting the Attorney General's credibility on the line.
>
> I have reviewed this situation and I think it was a slip of the tongue done in the heat of the moment. It was certainly not intentionally done. There was no intention to really vouch for the witness, but just simply a way of speaking.
>
> In any event, the Attorney General's opinion of the truthfulness of this witness, defense counsel's opinion of the truthfulness of this witness, and as far as you're concerned, my

-10-

opinion of the truthfulness of this witness doesn't make a [hill] of beans. It's your opinion of the truthfulness of this witness that matters.

And so you measure it that way and just disregard any statement that was made concerning bolstering the credibility of the witness. Does anyone have a problem with that?

The transcript shows that the jurors all nodded in assent. The court added, "By the way, in your absence, she's been chastised too."

As the prosecutor resumed closing argument, she stated:

And I have apologized. Ladies and gentlemen, there's only been one witness in this case, and it's up to you to decide whether or not you think he was telling the truth.

You heard Officer Josh [Ethridge] testify for most of the day. You saw the video that was made of his interaction with the Defendant. If you think he was telling the truth then the Defendant is guilty. It's as simple as that.

He's testified that he never would have arrested her unless he was absolutely sure she was driving under the influence. It's up to you whether to believe that or not.

The trial court found that the prosecutor's statement assuring that Corporal Ethridge did not testify falsely constituted vouching for the witness and was thus prosecutorial misconduct. See State v. Goltz, 111 S.W.3d 1, 6 (Tenn. 2003) ("It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."). The State concedes that the prosecutor's comment was improper, and the prosecutor acknowledged the misconduct when she apologized to the court. Prosecutorial misconduct does not constitute reversible error unless it more probably than not affected the outcome. See State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001).

In Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976), this court set out the following considerations for determining if the prosecutor's conduct could have improperly prejudiced the defendant and affected the verdict:

-11-

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case.

2. The curative measures undertaken by the court and the prosecution.

3. The intent of the prosecutor in making the improper statement.

4. The cumulative effect of the improper conduct and any other errors in the record.

5. The relative strength or weakness of the case.

See State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984) (approving these factors in determining if the misconduct resulted in reversible error).

Initially, the State contends that the Defendant waived this issue because she failed to include the full DVD recording of the traffic stop in the appellate record. The State argues that this court cannot review the improper statement's effect in context and in light of the facts and circumstances of the case. The full recording was played for the jury and is part of the evidence, but the Defendant failed to have it made part of the record on appeal. See State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993) (noting the appellant's "duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." (citing State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983)). It is not a matter of waiver, but a determination of prejudice on this issue could turn on the strength of the proof. See Judge, 539 S.W.2d at 344. We conclude that the record as it exists fails to demonstrate reversible error.

Regarding the context of the prosecutor's comment and the facts and circumstances of the case, the Defendant argues that witness credibility was particularly important in this case because the State relied on Corporal Ethridge as its sole witness, because Corporal Ethridge's credibility was undermined when he testified that standing heel-to-toe for a long time was not more difficult than for a short time, and because the prosecutor undermined the Defendant's credibility by making four statements during closing argument that the Defendant lied. The prosecutor's relevant statements were:

> She ran a red light. It was clearly red. She lied to an officer and told him that she thought it was yellow. She lied to the officer and told him that there was no alcohol in the car. She

lied to the officer. She lied to the officer and told him that she had not been drinking.

The Defendant's contradictory answers to the officer's questions about her drinking were evident on the DVD excerpt included in the record. The Defendant pled guilty to driving through a red light, but the record contains her assertion in the DVD excerpt that she thought the light was yellow. The jurors watched the entire recording of the traffic stop and could decide for themselves whether Corporal Ethridge's testimony about the relative difficulty of standing heel-to-toe for long versus short periods affected his credibility. See Bland, 958 S.W.2d at 659 (noting that questions of witness credibility are resolved by the trier of fact). This factor does not weigh in favor of the prosecutor's comment affecting the verdict.

As for the trial court's curative measures, the court immediately sustained the Defendant's objection to the prosecutor's improper comment. The court then considered argument from both sides before denying the Defendant's motion to dismiss. Upon the jury's return, the court gave a lengthy curative instruction and left no doubt that the prosecutor's comment was improper and must be disregarded. We note also that the prosecutor emphasized, as she resumed closing argument, that it was the jury's role to evaluate witness credibility. Cf., e.g., Goltz, 111 S.W.3d at 9 (holding that the prosecutor's egregious improper comments permeated the trial's outcome when the comments "continued unabated" after two sustained objections).

Regarding the prosecutor's intent, the Defendant argues that the prosecutor's statements about the Defendant's truthfulness during the traffic stop showed the prosecutor's premeditated intent to vouch for Corporal Ethridge's credibility in comparison. The trial court found that the prosecutor's statement about the officer's credibility was an unintentional "slip of the tongue." The prosecutor apologized to the trial court and explained to the jurors that only their opinions of credibility were relevant. As for the last two factors, the record does not show other improper conduct or errors contributing to cumulative error and does not show a weak case for the State. We hold that the trial court did not abuse its discretion by denying a mistrial.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE

-13-