FILED

05/23/2018

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 12, 2017 Session

**STATE OF TENNESSEE v. BOBBY RAY GRAVES, JR.**

**Appeal from the Circuit Court for Warren County**
**No. 14-CR-372      Larry B. Stanley, Jr., Judge**

_____

**No. M2017-00088-CCA-R3-CD**

_____

A Warren County Circuit Court Jury convicted the Appellant, Bobby Ray Graves, Jr., of failure to appear, a Class E felony, and the trial court sentenced him to six years in confinement. On appeal, the Appellant contends that the evidence is insufficient to support the conviction because the State failed to prove that he "went into hiding to avoid prosecution" and that the State committed prosecutorial misconduct during closing arguments. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Nathan Scott Luna (on appeal), Murfreesboro, Tennessee, and Rick Stacy (at trial), McMinville, Tennessee, for the appellant, Bobby Ray Graves, Jr.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Lisa Zavogiannis, District Attorney General; and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

At trial, Jonathan Crouch, a correction officer with the Warren County Sheriff's Department (WCSD), acknowledged that on September 13, 2013, he appeared before the Warren County Grand Jury and asked for an indictment against the Appellant for introducing contraband into a penal institution, a felony. In September 2014, Crouch received a subpoena to appear and testify at the Appellant's trial for the offense, which

was set for October 7, 2014. Crouch, other witnesses, and the Appellant's attorney were present for trial on October 7. However, the Appellant was not present, so the trial did not go forward. On cross-examination, Crouch testified that he did not know why the Appellant did not appear and acknowledged that the Appellant's case for introducing contraband into a penal institution still had not gone to trial.

Ryan Julian Moore testified that he represented the Appellant in the case for introducing contraband into a penal institution. Moore appeared with the Appellant at the Appellant's arraignment, and the trial court set a trial date. The Appellant was out on bond while awaiting trial, and he and Moore maintained contact. The State asked Moore what information he obtained from the Appellant in order to stay in contact with him, and Moore answered, "Well, his whereabouts, telephone numbers. You know, we would also typically get email addresses. [The Appellant] did not have an email address to my understanding."

Moore testified that the Appellant's trial initially was set for May 20, 2014, but had to be continued to July 2, 2014. Moore spoke with the Appellant by telephone and met with him in person to make him aware of the date change. At some point, the Appellant's trial was reset for October 7, 2014. On June 27, 2014, Moore contacted the Appellant by telephone to discuss the new trial date. On July 10, 2014, Moore and the Appellant met in Moore's office, and Moore "reaffirmed" to the Appellant that October 7 was the date for trial. On September 26, 2014, the Appellant and Moore met in Moore's office to discuss trial strategy.

Moore testified that as October 7 approached, he began to worry that the Appellant might not show up for trial because the Appellant's bondsman, Len Murray, was having "trouble" locating the Appellant. Moore began trying to contact the Appellant and used five different telephone numbers to try to reach him but was unsuccessful. Moore did not try to contact the Appellant by mail. The Appellant's brother, Brandon Graves, lived in Knoxville, and Moore received a telephone call from Graves the day before trial. On October 7, 2014, the Appellant's witnesses appeared for trial, but the Appellant did not appear. Moore said he did not remember if he tried to contact the Appellant after October 7.

On cross-examination, Moore testified that the Appellant was having "some marital difficulties" before trial. He said that he did not know if the Appellant owned a car and that he did not know why the Appellant did not appear for trial.

Len Murray testified that he retired from the Rutherford County Sheriff's Department in 2007, went into the bail bonding business, and was a licensed bail bondsman. The Appellant's bail for introducing contraband into a penal institution was

set at $2,500, and Murray signed the Appellant's bail bond on June 4, 2014. At that time, the Appellant's trial date was July 2, 2014. However, the trial was later reset for October 7, and Murray advised the Appellant of the new date.

Murray testified that when he signed the Appellant's bond, the Appellant was required to provide him with addresses and telephone numbers so that he could stay in contact with the Appellant. While the Appellant remained on bond, the Appellant was required to report to Murray every Tuesday by telephone so that Murray could "verify phone numbers, addresses, where [he] is staying, is he working anywhere." Murray said the Appellant complied with that requirement "until probably the last three weeks prior to the October court date." Murray explained,

> I believe it was probably about the last week and a half in September and then all the way up to the trial date I did not hear from him. I tried making contact with him, the co-signer but we were -- at that point he still had not failed to appear. I was trying to make contact with him and was unable to do so.

Murray became concerned about his liability on the bond. He talked with the bond's co-signer; the Appellant's wife; and the references the Appellant had provided, but "nobody seemed to know where he was at." Murray's boss also contacted the Appellant's brother.

Murray testified that he was present in court on October 7 but that the Appellant did not appear. That same day, a scire facias and a warrant for the Appellant's arrest were issued. Murray obtained a certified copy of the warrant and began looking for the Appellant. He stated,

> We started our search at that time here, in other counties and whatnot, trying to locate [the Appellant], interviewing people, following leads. We spent a considerable amount of time and money, gasoline, mileage, trying to locate [the Appellant] but at that point we had not and it wasn't until I was contacted by the probation, State probation services that [the Appellant] had been arrested in Knoxville.

Murray had a cellular telephone with him at all times, and the Appellant knew how to contact him. If the Appellant had contacted Murray and said he did not have a ride to court, Murray would have tried to arrange transportation for him.

On cross-examination, Murray testified that he knew prior to October 7, 2014, that the Appellant was no longer living with the Appellant's wife. However, he did not know

prior to that date that the Appellant was from Knoxville. Murray acknowledged that he did not know why the Appellant did not appear for trial on October 7, 2014.

Deputy Newman Ford of the WCSD testified that he used to be a correction officer at the Warren County Jail and was supposed to testify against the Appellant on October 7, 2014. However, the Appellant did not appear for trial. On cross-examination, Deputy Ford acknowledged that the contraband involved a cellular telephone, not drugs. At the conclusion of his testimony, the State rested its case.

The Appellant testified that he originally was from Knoxville and that his brother still lived there. When the Appellant married his wife, he moved to Warren County. In 2000, the Appellant pled guilty to five aggravated robberies and served time in prison. In 2012, he pled guilty to felony thefts and shoplifting. He said he pled guilty to all of the offenses because he was guilty. While he was serving time in jail for the felony thefts, he was charged with introducing contraband into a penal institution. He decided to go to trial on the charge because he was not guilty.

The Appellant testified that while he was awaiting trial, he was released from jail. He met with his attorney, Ryan Moore, and stayed in contact with him. The Appellant and his wife lived in Warren County, the Appellant remained in Warren County, and he was prepared to go to trial on July 2, 2014. However, at the end of June 2014, the trial date was reset to October 7, 2014. The Appellant remained in contact with Moore and met with him. In August, the Appellant's wife "put [him] out," and he was living "[o]n the streets here and there." He did not own a car, so a friend gave him a ride to Knoxville. The Appellant intended to return to Warren County for trial on October 7 and "felt good" about his defense.

The Appellant testified that on October 7, his brother was driving him from Knoxville to Warren County. They left Knoxville at 7:00 or 7:30 a.m. in plenty of time for court. However, about an hour into the trip, the Appellant's brother's car "started messing up" on Interstate 40, so they pulled over. The car was "smoking," and they could not drive it. The Appellant's brother telephoned the Warren County Courthouse to let "them" know the Appellant would be "a little late." During the call, the Appellant's brother learned that an "FTA," or failure to appear, had been issued for the Appellant. The Appellant's brother telephoned a friend, and the Appellant and his brother waited about forty-five minutes for the friend to come get them. While they were waiting, they got the car "up and running," and the friend followed them back to Knoxville. The Appellant did not go to Warren County and did not contact his attorney or his bondsman. He acknowledged that he regretted how he handled the situation.

- 4 -

On cross-examination, the Appellant testified that he spoke with Moore within a week before the scheduled trial. He said that he did not remember the date he spoke with Moore but that "I remember speaking with him." The Appellant acknowledged that his brother and his brother's friend were not present to testify for him about why he was unable to appear for trial on October 7. He said that he was no longer on speaking terms with his brother and that he did not know his brother's friend. The Appellant acknowledged that he was on probation when he went to Knoxville and that he violated his probation by going there. He also acknowledged that he knew he would be arrested for the probation violation if he returned to Warren County on October 7.

At the conclusion of the proof, the jury convicted the Appellant of failure to appear. After a sentencing hearing, the trial court found him to be a career offender and sentenced him to the statutorily-required punishment of six years to be served at sixty percent release eligibility. See Tenn. Code Ann. § 40-35-108(c) (providing that a career offender must serve the maximum punishment in Range III); Tenn. Code Ann. § 40-35-112(c)(5) (providing that the maximum punishment in Range III for a Class E felony is six years); Tenn. Code Ann. § 40-35-501(f) (providing that a career offender does not become eligible for release until serving sixty percent of the sentence).

## II. Analysis

### A. Sufficiency of the Evidence

The Appellant contends that the evidence is insufficient to support the conviction because the State failed to prove that he "went into hiding to avoid prosecution." The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the

burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

As charged in this case, "[i]t is unlawful for any person to knowingly fail to appear as directed by a lawful authority if the person . . . [k]nowingly goes into hiding to avoid prosecution or court appearance." Tenn. Code Ann. § 39-16-609(a)(5). The indictment specified that the "prosecution or court appearance" being avoided by the Appellant was "trial." It is a defense to prosecution that the person "had a reasonable excuse for failure to appear at the specified time and place." Tenn. Code Ann. § 39-16-609(b)(2).

The Appellant contends that the evidence is insufficient to support the conviction because all of the State's witnesses testified that they did not know why he did not appear for trial on October 7; thus, the evidence does not show that he was "hiding to avoid prosecution." We disagree with the Appellant.

Taken in the light most favorable to the State, the evidence shows that the Appellant knew he was to appear for trial on October 7, 2014, and that he provided his attorney, Ryan Moore, and his bondsmen, Len Murray, with addresses and telephone numbers so they could maintain contact with him while he was awaiting trial. In the months leading up to the trial date, the Appellant kept in contact with Moore and made required weekly telephone calls to Murray. Two or three weeks before trial, though, he suddenly and inexplicably stopped contacting Murray. Concerned, Murray began trying to find the Appellant by using the telephone numbers, addresses, and references the Appellant had provided to Murray for the express purpose of Murray's being able to locate the Appellant. Moore, aware that Murray could not find the Appellant, also used numerous telephone numbers the Appellant had provided but was unable to get in touch with him. The Appellant did not appear on the day of his scheduled trial, and he never notified Moore or Murray about the reason for his absence or his location. Murray used various resources to try to track down the Appellant after he did not appear for trial but still was unable to find him. Murray did not learn the Appellant's whereabouts until the

police arrested the Appellant in Knoxville. From these facts, we conclude that the jury heard circumstantial evidence from which it reasonably could infer that the Appellant did not appear for trial on October 7 because he was hiding to avoid trial. Accordingly, we conclude that the evidence is sufficient to support the conviction.

## B. Prosecutorial Misconduct

The Appellant contends that the State committed prosecutorial misconduct during closing arguments. The State argues that the Appellant is not entitled to relief. We agree with the State.

In order to prevail on a claim of prosecutorial misconduct, the Appellant must demonstrate that the conduct committed by the prosecution was so inflammatory or improper that it affected the verdict to his detriment. Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965); State v. Gray, 960 S.W.2d 598, 609 (Tenn. Crim. App. 1997). In making this determination, this court is guided by five factors:

1.  The conduct complained of viewed in context and in light of the facts and circumstances of the case.

2.  The curative measures undertaken by the court and the prosecution.

3.  The intent of the prosecutor in making the improper statement.

4.  The cumulative effect of the improper conduct and any other errors in the record.

5.  The relative strength or weakness of the case.

Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); see also State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984). We note that "the Judge factors should only be applied to claims of improper prosecutorial argument," as in this case, not claims of unconstitutional prosecutorial comment. State v. Jackson, 444 S.W.3d 554, 591 n.50 (Tenn. 2014). "[T]he State bears the burden of proving unconstitutional prosecutorial comment or argument harmless beyond a reasonable doubt, whereas a defendant bears the burden of proving prejudice when prosecutorial argument is merely improper." Id.

Regarding prosecutorial misconduct during closing arguments, it is well-established that closing argument is an important tool for both parties during a trial; thus,

counsel is generally given wide latitude during closing argument, and the trial court is granted wide discretion in controlling closing arguments. See State v. Carruthers, 35 S.W.3d 516, 577-78 (Tenn. 2000) (appendix). "Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003).

In Goltz, 111 S.W.3d at 6, this court outlined "five general areas of prosecutorial misconduct" that can occur during closing argument: (1) intentionally misleading or misstating the evidence; (2) expressing a personal belief or opinion as to the truth or falsity of the evidence or defendant's guilt; (3) making statements calculated to inflame the passions or prejudices of the jury; (4) injecting broader issues than the guilt or innocence of the accused; and (5) intentionally referring to or arguing facts outside the record that are not matters of common public knowledge. "In determining whether statements made in closing argument constitute reversible error, it is necessary to determine whether the statements were improper and, if so, whether the impropriety affected the verdict." State v. Pulliam, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996).

Although the Appellant takes issue with five statements made by the prosecutor during the prosecutor's closing arguments, he did not object to four of those statements. A defendant's failure "to proffer contemporaneous objections to the challenged remarks" waives the issue on appeal. State v. Robinson, 146 S.W.3d 469, 518 (Tenn. 2004); see Tenn. R. App. P. 36(a). During oral arguments, counsel for the Appellant made a cursory request that we review the four statements for plain error. Tenn. R. App. P. 36(b) (providing that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal"). However, given that the Appellant made no legal argument in his brief or at oral arguments as to why the prosecutor's statements rise to the level of the heightened plain error standard, we decline counsel's request. Therefore, we will only address the statement to which trial counsel objected.

During the State's rebuttal closing, the prosecutor stated as follows:

> The offer of proof that you're given in this case by the defendant to explain his lack of presence is that he tried to get here but he broke down on the interstate. His brother was with him. A friend came and got them and rather than bringing him on to McMinnville to address the failure to appear that had been issued and try to get that resolved, they

turned around and went back to Knoxville and never bothered to contact the court again.

Now, the defense has offered to put responsibility for disproving that off on me but that's the defense's theory, theory that was being offered for the first time today. I didn't know to call his brother.

At that point, defense counsel requested to approach the bench and stated, "There is no obligation on our part to provide anything of that nature until today. That is what trial is for." The trial court responded, "I think that may need clarifying. Yes today would have been the day to put forth whatever evidence you had. [The prosecutor] may have inadvertently implied that there was another day that that should have been done but anyway, go ahead." The prosecutor continued as follows:

Today would have been the day. It's his evidence. He does not have his brother here. He doesn't have his brother's friend here. He doesn't have anybody from the clerk's office here to explain about receiving that phone call. He doesn't have any explanation as to why he didn't proceed on to McMinville when he had a ride, why he didn't take care of the problem. He offers that up to you as reasonable doubt for convicting him. It's not.

The Appellant contends that the argument about his failure to have his brother or his brother's friend testify at trial "injected a broader issue than that of the defendant's guilt or innocence," which violates Goltz. We conclude that the State did not commit prosecutorial misconduct. During cross-examination of the Appellant, the State asked if his brother, his brother's friend, or anyone from the courthouse who took his brother's telephone call was present to testify for him. The Appellant did not object to the State's questions and answered each question in the negative. Therefore, the prosecutor's argument was based on the evidence at trial. Moreover, during the State's initial closing argument, the prosecutor argued that if the Appellant's story about having car trouble on the highway were true, then the Appellant's brother and brother's friend would have testified for him. The prosecutor further argued that because the Appellant did not call his brother or his brother's friend to testify, the jury could conclude that their testimony would not have been favorable to the Appellant. Again, the Appellant never objected to the prosecutor's statements.

We note that the missing witness rule allows a party to argue and have the jury instructed "that if the other party has it peculiarly within his power to produce a witness

- 9 -

whose testimony would naturally be favorable to him, the failure to call that witness creates an adverse inference that the testimony would not favor his contentions." State v. Middlebrooks, 840 S.W.2d 317, 334 (Tenn. 1992). However, before a party may invoke the missing witness rule, the record must demonstrate that (1) the witness had knowledge of material facts; (2) a relationship existed between the witness and the opposing party that would naturally incline the witness to favor that party; and (3) the missing witness was available to the process of the court for trial. State v. Francis, 669 S.W.2d 85, 88 (Tenn. 1984); Delk v. State, 590 S.W.2d 435, 440 (Tenn. 1979). The Appellant did not argue at trial that the prosecutor's cross-examination questions or closing arguments violated the missing witness rule. He also does not raise the rule on appeal. Given the Appellant's failure to object to the State's questioning at trial, the Appellant's failure to object to the State's initial closing argument, and the Appellant's failure to make any argument regarding the missing witness rule at trial and on appeal, we conclude that he is not entitled to relief. See Tenn. R. Evid. 36(a).

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE

- 10 -